**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 13 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 01-6384

JAMES ARTHUR MONTS, JR.,

Defendant - Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 00-CR-110-R)**

---

Teresa Black, Assistant United States Attorney (Robert G. McCampbell, United States Attorney, on the brief), Oklahoma City, Oklahoma, for Plaintiff - Appellee.

Paul Antonio Lacy, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant - Appellant.

---

Before **SEYMOUR**, **BALDOCK**, and **KELLY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

Defendant-Appellant James Arthur Monts, Jr. was convicted by a jury of two counts of failure to pay child support obligations in violation of the Child Support Recovery Act ("CSRA"), 18 U.S.C. § 228(a)(1) (Count 1), and the

Deadbeat Parents Punishment Act ("DPPA"), 18 U.S.C. § 228(a)(3) (Count 2), (collectively, "§ 228(a)"). He was sentenced to a term of imprisonment of 15 months followed by one year of supervised release on Count 2, and a term of probation of five years on Count 1, each count to run concurrently. The court also ordered him to pay restitution of $66,415.56.

On appeal, Mr. Monts challenges his conviction on the basis that (1) § 228(a) is unconstitutional because it violates the Commerce Clause, the Ex Post Facto Clause and the Tenth Amendment; (2) prosecution under § 228(a) is prohibited here by the New York statute of limitations and (3) the evidence is insufficient to support his convictions. He challenges his sentence on the basis that the district court erred (1) by including in its calculation amounts of past due child support that were barred by the New York statute of limitations; (2) by applying the "more than minimal planning" enhancement and (3) by ordering restitution that included past due child support barred by the New York statute of limitations. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and affirm.

Background

Mr. Monts and Diane Cooper married in New York in 1973. After their daughter Melissa was born on November 9, 1974, the couple separated. A final

child support order was entered in a Westchester County, New York court on October 30, 1975, ordering Mr. Monts to pay child support of $50 per week to Ms. Cooper. Mr. Monts was present when the final support order was entered. He made several payments but was in arrears within months of the entry of the order. The couple's divorce became final in 1977. Shortly thereafter, Mr. Monts left New York and lived in various other states over the years. He paid no child support. Ms. Cooper left New York in 1981 and eventually settled in Oklahoma in 1982. Ms. Cooper made several unsuccessful efforts to have the support order enforced. Finally, in 1996, Ms. Cooper learned Mr. Monts' location and sought to have the order enforced in his state of residence, Virginia. Her efforts finally met with some success, albeit limited. Virginia was able to collect $6,765.00 of the unpaid child support by garnishing his wages. The balance remained unpaid.

Discussion

The CSRA makes it a federal criminal offense for a person to "willfully fail[] to pay a support obligation with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 1 year, or is greater than $5,000." 18 U.S.C. § 228(a)(1). The DPPA likewise makes it a federal felony offense for a person to "willfully fail[] to pay a support obligation with respect to a child who resides in another State, if such obligation has

remained unpaid for a period longer than 2 years, or is greater than $10,000." 18 U.S.C. § 228(a)(3). For each provision, a "support obligation" means "any amount determined under a court order or an order of an administrative process pursuant to the law of a State . . . to be due from a person for the support and maintenance of a child." 18 U.S.C. § 228(f)(3). Finally, upon a conviction under either provision, "the court shall order restitution under section 3663A in an amount equal to the total unpaid support obligation as it exists at the time of sentencing." 18 U.S.C. § 228(d).

## I. Constitutionality of § 228(a)

We review challenges to the constitutionality of a statute de novo, United States v. Bolton, 68 F.3d 396, 398 (10th Cir. 1995), and begin the analysis with a presumption of constitutionality, United States v. Morrison, 529 U.S. 598, 607 (2000).

### (a) Commerce Clause

Mr. Monts argues that Congress exceeded its authority under the Commerce Clause because both the CSRA and the DPPA: "(1) regulate an activity that neither constitutes nor involves commerce; (2) lack the prerequisite interstate nexus sufficient to confer federal jurisdiction; (3) are overbroad; and (4) represent an unconstitutional foray by the federal government into domestic relations, a power traditionally reserved to states." Aplt. Br. at 13. Mr. Monts acknowledges

that in United States v. Hampshire, 95 F.3d 999, 1001-1006 (10th Cir. 1996), this court considered and rejected these arguments with regard to the CSRA. However, Mr. Monts maintains that two recent Supreme Court cases, Jones v. United States, 529 U.S. 848 (2000), and United States v. Morrison, 529 U.S. 598 (2000), suggest that § 228(a) no longer bears a sufficient interstate nexus and is thus unconstitutional despite the reasoning of Hampshire.

We disagree. In Jones, the Supreme Court held that an owner-occupied dwelling not used for any commercial purposes was not property "used" in interstate commerce under the federal arson statute. 529 U.S. at 859. The result in Jones turned on the Court's conclusion that only property "currently used in commerce or in an activity affecting commerce" exhibits a sufficient interstate nexus to satisfy the requirement under the Commerce Clause. Id. As a result, the Jones reasoning merely reaffirms the proposition that Congress can, consistent with its Commerce Clause power, criminalize conduct provided such conduct bears a sufficient interstate nexus as required by United States v. Lopez, 514 U.S. 549 (1995).

In holding that Congress exceeded its Commerce Clause power in enacting the Violence Against Women Act ("VAWA"), the Supreme Court in Morrison essentially reiterated its Lopez analysis and rested its conclusion on the fact that the VAWA failed to satisfy the Lopez requirements. Morrison, 529 U.S. at 613-

19. Unlike the VAWA in <u>Morrison</u>, § 228(a) directly involves an activity that is both economic and interstate in nature, specifically, the regulation of a court-ordered obligation to pay money in interstate commerce. <u>Hampshire</u>, 95 F.3d at 1003. Furthermore, unlike the VAWA, § 228(a) contains a jurisdictional element establishing that the activity in question is interstate in nature by requiring as an essential element that the defendant reside in a different state than the child for whom support is owed. 18 U.S.C. § 228(a). And lastly, as discussed in <u>Hampshire</u>, 95 F.2d at 1004, Congress made explicit findings concerning the impact of delinquent parents on interstate commerce, further supporting the conclusion that § 228(a) is within the <u>Lopez</u> framework.

(b) Ex Post Facto Clause and Tenth Amendment

Mr. Monts also attacks the constitutionality of § 228(a) by arguing that it violates the Ex Post Facto Clause and the Tenth Amendment. Mr. Monts bears the burden of distinguishing <u>Hampshire</u>'s holding that neither the Ex Post Facto Clause nor the Tenth Amendment are valid bases to attack the constitutionality of § 228(a). <u>Hampshire</u>, 95 F.3d at 1004-06. Though Mr. Monts attempts to distinguish <u>Hampshire</u> by characterizing this as an "as applied" case, <u>Hamphire</u> is controlling.

Though noted in passing, Mr. Monts elected not to brief his federalism and comity objections to § 228(a). Thus, we deem these claims abandoned below and

decline to reach them.  See O'Connor v. City & County of Denver, 894 F.2d 1210, 1214 (10th Cir. 1990).

II.  New York Statute of Limitations

Mr. Monts next argues that prosecution under § 228(a) is barred where the statute of limitations of the state issuing the underlying support order renders all or part of the child support arrearage unenforceable.  The district court rejected this argument, holding that the default federal statute of limitations found at 18 U.S.C. § 3282 applied instead.

Mr. Monts' reasoning on this issue is somewhat involved and proceeds as follows.  In New York, the current statute of limitations for an action or proceeding to enforce a support order is twenty years.  N.Y.C.P.L.R. § 211(e).  However, because this provision only applies to support orders entered after 1987, the default six year statute of limitations applies to support orders entered earlier, as is the case here.  N.Y.C.P.L.R. § 213(1).  Mr. Monts maintains that when the grand jury returned his indictment on August 16, 2000, the six-year New York limitations period barred any action for past due child support accruing before August 16, 1994.  Thus, Mr. Monts argues that his past due balance was effectively reset to zero on August 16, 1994.  On that day, his daughter was twelve weeks from her twentieth birthday.  Because New York law requires continued support under a support order until the child's twenty-first birthday,

Mr. Monts contends that his enforceable support obligation only amounted to the 64 weeks accruing between August 16, 1994 and his daughter's twenty-first birthday on November 9, 1995, a sum total of approximately $3,200.00.

As noted above, because Mr. Monts then resided in Virginia, the Virginia Division of Child Support Enforcement ("Virginia DCSE") pursued him on behalf of Ms. Cooper in early 1996. After notifying Mr. Monts of his $42,564.07 arrearage and informing him how to contest the enforcement, the Virginia DCSE began garnishing his wages, collecting $6,765.00 until December 14, 1998, when his employment ended. Mr. Monts claims that because Virginia collected more during this period than his total enforceable support obligation ($3,200), he had no obligation that "remained unpaid" under § 228(a) at the time the indictment was returned in August 2000.

Mr. Monts has cast his argument in terms that confuse the two interrelated issues before us involving limitations periods. The first of these issues is whether the indictment itself was presented within the applicable limitations period. The second is whether the New York statute of limitations applies on the facts of this case to negate a required element of the proof under § 228(a), specifically, that a support obligation remained unpaid for at least one year at the time of the indictment. Because resolution of the first issue essentially depends upon our resolution of the second, we proceed directly to the second issue.

New York's six year statute of limitations has no bearing on this case given the facts. We are not here concerned with any action or proceeding to enforce the original New York support order in a New York court. Although Mr. Monts did return to New York to obtain a certified copy of the support order upon learning of Virginia's intent to enforce, he never sought review in a New York court to modify or vacate the order. In this case, enforcement of the original New York support order was sought in Virginia.

After opening a case in March 1996, the Virginia DCSE sent, and Mr. Monts signed for on March 21, 1996, a certified notice informing him that the Virginia DCSE was now representing Ms. Cooper in the enforcement of the support order and directing him to send all future support payments to the Virginia DCSE. Because the support order was from New York, Ms. Cooper resided in Oklahoma and Mr. Monts resided in Virginia, the Virginia DCSE applied to this case its provisions of the Uniform Interstate Family Support Act (UIFSA), Va. Code §§ 20-88.32 to -88.82, which Congress mandated all states adopt by January 1, 1998. 42 U.S.C. § 666(f). Under UIFSA, the Virginia DCSE applied its own Virginia law and procedures to the enforcement action.

Virginia's UIFSA provisions provide for two enforcement methods for an out-of-state support order: administrative enforcement under Article 7 and enforcement after registration under Article 8 . Under Article 7, Va. Code § 20-

88.65(A), a party seeking to enforce such a support order may send certain required documents to a support enforcement agency, i.e., the Virginia DCSE. Section 20-88.65(B) then allows the agency, without initially seeking to register the order, to use any authorized administrative procedure to enforce the support order, such as wage garnishment or the filing of a lien. It further provides that "[i]f the obligor does not contest administrative enforcement, the order need not be registered. If the obligor contests the validity or administrative enforcement of the order, the support enforcement agency shall register the order pursuant to" Article 8. Va. Code § 20-88.65(B). The obligor need only contest the administrative enforcement to receive the more rigorous procedural protections provided under Article 8.

Opting first to proceed administratively, the Virginia DCSE on April 3, 1996, sent Mr. Monts (1) a notice of proposed wage garnishment action which informed him of his delinquency and the total arrearage and (2) an advanced notice of lien. Trial Tr. at 70-72. The garnishment notice explained in detail how to contest the administrative enforcement:

> By law, you can contest this wage withholding only if you are not the person cited or there is a mistake in the amount of support owed. If you . . . contest this order, you must file a written request for an appeal hearing within 10 days from the date of service of this notice. Send the request to the Hearings Officer, 730 East Broad Street, Richmond, VA 23219-1849. You will be notified of the time and place of the hearing. Pursuant to the section of the Virginia Code cited below, you will be given the opportunity to present your

> objection to this proposed withholding of earnings. [I]f you . . . disagree with the Hearings Officer's decision, the decision can be appealed to a court of the Commonwealth within 10 days of receipt of the Hearings Officer's decision in accordance with the Section of the Code of Virginia referenced below.

Addendum to Aplee. Br., Ex. 15A at 2. Furthermore, each notice provided him the case officer's name, phone number and location so he could seek further information relating to the enforcement. Mr. Monts received the notices, because he called and later appeared at the Virginia DCSE office to complain that he owed no arrearage, yet he did not file a protest nor avail himself of any valid procedure to contest the administrative enforcement. After the expiration of the ten-day protest period, wage garnishment began.

Had Mr. Monts contested the administrative enforcement, under Virginia law, not only would he have received the hearing and appeal opportunity, the Virginia DCSE would also have been required to register the order and to proceed under Article 8. Va. Code § 20-88.65(B). Article 8 itself would have also guaranteed Mr. Monts a hearing upon request in which he could contest the validity or enforcement of the order and in which he could have asserted any defense or contested "the amount of any alleged arrearages." Va. Code § 20-88.71. Because Mr. Monts chose not to contest the administrative enforcement, he has waived his right to do so and cannot now attack the Virginia enforcement in the context of an appeal of his federal criminal prosecution. See, e.g., Micheli

- 11 -

v. Director, OWCP, 846 F.2d 632, 635 (10th Cir. 1988). We therefore conclude that New York's six year statute of limitations has no bearing on this case given the facts before this court.

We turn now to the first limitations issue noted above, namely, whether the indictment itself was time-barred by the applicable statute of limitations. As did the district court, we conclude that because 18 U.S.C. § 228 contains no specific limitations period, the default federal limitations period of five years provided by 18 U.S.C. § 3282 applies to the issue of whether the indictment itself was time-barred. Section 3282 provides that for non-capital offenses, "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted . . . unless the indictment is found . . . within five years next after such offense shall have been committed." 18 U.S.C. § 3282. The offenses charged were the failure to pay a support obligation which remained unpaid for longer than one year (Count 1) or longer than two years (Count 2). Because we determined above that Mr. Monts' obligation to pay support was a viable obligation as determined by the Commonwealth of Virginia in 1996, we conclude that the offenses charged were committed within five years of the indictment, and as such, § 3282 was no bar to the prosecution.

III. Sufficiency of Evidence

At the close of the government's case, Mr. Monts moved for judgment of

acquittal under Fed. R. Crim. P. 29(a) on the basis that the evidence was insufficient to sustain a conviction relying upon his limitations argument. We review the record de novo when reviewing both the sufficiency of the evidence to support a conviction and the denial of a motion for judgment of acquittal. United States v. Vallo, 238 F.3d 1242, 1246 (10th Cir. 2001). The jury's verdict will be upheld if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Conviction on both counts required the government to prove (1) willful failure to pay, (2) a past due support obligation with respect to a child, (3) who resides in another State. 18 U.S.C. §§ 228(a)(1), (a)(3). Conviction on Count 1 also required proof that the support obligation either remained unpaid for more than one year or was greater than $5,000. 18 U.S.C. § 228(a)(1). Conviction on Count 2 also required proof that the support obligation either remained unpaid for more than two years or was greater than $10,000. 18 U.S.C. § 228(a)(3). A "support obligation" means "any amount determined under a court order or an order of an administrative process pursuant to the law of a State . . . to be due from a person for the support and maintenance of a child." 18 U.S.C. § 228(f)(3).

The evidence was clearly sufficient. Mr. Monts was ordered by a New

York court in 1975 to pay child support. Trial Tr. at 19-24. He was aware of the support order and failed to pay. Trial Tr. at 75. He was continually in arrears on his obligation since 1976, which was the year he admitted he last made a voluntary payment. Trial Tr. at 24, 32, 43, 71, 84, 129. During the period of the offenses charged, Mr. Monts had ample funds from employment or otherwise from which he could have attempted to satisfy his obligation. Trial Tr. at 105-113. He never resided in Oklahoma, but his child did from mid-1982 until trial. Trial Tr. at 13, 30-31, 102, 117. Finally, at all times charged in each count, Mr. Monts owed over $40,000 in arrears exclusive of interest representing unpaid amounts accruing since 1975. Trial Tr. at 23, 85-86.

IV.  Application of U.S.S.G. § 2B1.1(b)(1) and (b)(4)

When reviewing a district court's sentencing determination, we must "accept the findings of fact of the district court unless they are clearly erroneous and [must] give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). A district court's determination of what may be properly considered in assessing "loss" under the Guidelines is reviewed de novo. United States v. Williams, 50 F.3d 863, 864 (10th Cir. 1995).

Relying once again on the New York limitations argument, Mr. Monts argues first that the district court erred by calculating his sentence based on a "loss" figure which included unpaid amounts of child support which he maintains

are time-barred. The district court rejected this argument, as do we for the reasons set out above. The government presented sufficient evidence at trial to prove that Mr. Monts owed more than $40,000 in unpaid child support, thus establishing the amount of "loss" under U.S.S.G. § 2B1.1 and supporting a seven-level upward adjustment in addition to the base offense level of four. See U.S.S.G. § 2J1.1 (2000) (most analogous guideline is § 2B1.1). The district court relied on the Virginia DCSE calculation in finding that Mr. Monts owed $66,415.56 in unpaid child support.

Mr. Monts also argues that the district court erred by imposing a two-level enhancement for "more than minimal planning" pursuant to U.S.S.G. § 2B1.1(b)(4). He maintains that the crime he committed was failure to pay in its simplest form, and, because no court process was initiated until after his child reached age twenty-one, he asserts that his conduct should properly be viewed as simply not cooperating with the debt collection process.

U.S.S.G. § 2B1.1(b)(4)(A) directs the district court to increase the base offense level by two levels if "the offense involved more than minimal planning." Application Note One under § 2B1.1 directs the reader to §1B1.1 for the definition of "more than minimal planning." U.S.S.G. § 2B1.1 n.1. U.S.S.G. § 1B1.1 states that one situation warranting the adjustment is where there is more planning than is typical for committing the offense in a simple form. U.S.S.G. §

1B1.1 n.1(f); see, e.g., United States v. Archuletta, 231 F.3d 682, 684 (10th Cir. 2000).

After reviewing the PSR and hearing the government's comprehensive review of Mr. Monts' considerable efforts to avoid paying child support, Sent. Tr. at 3-7, the district court concluded that Mr. Monts's conduct over the years exhibited more planning than is typical for committing the offense in its simple form and ruled that the adjustment was warranted:

> It just strikes me the defendant went to great lengths to – not only did he not pay child support, he went to great lengths to avoid paying child support by his various efforts of moving, and not filing tax returns, and generally being obstructive with the authorities on this. So it just strikes me that it's not a simple – just simply a failure to pay, it's much more than that.

Sent. Tr. at 7. The district court's imposition of the adjustment for more than minimal planning is supported by adequate evidence. See United States v. Copus, 110 F.3d 1529, 1537 (10th Cir. 1997).

V. Validity of the Restitution Order

Mr. Monts finally argues that the district court erred by imposing a restitution order upon him that included time-barred amounts of past-due child support. The district court ordered restitution from Mr. Monts in the amount of $66,415.56, the amount determined by the Virginia DCSE and accepted by the district court as the total unpaid obligation at the time of sentencing.

Congress elected not merely to permit the trial court to order restitution in

these cases, it affirmatively mandated restitution: "Upon a conviction under this section, the court shall order restitution under section 3663A in an amount equal to the total unpaid support obligation as it exists at the time of sentencing."  18 U.S.C. § 228(d).  The only issue for the district court to determine is the amount of the total unpaid support obligation for which it must order restitution.

We review the legality of a restitution order de novo.  We accept the factual findings underlying a restitution order unless they are clearly erroneous, and we review the amount of restitution for an abuse of discretion. United States v. Nichols, 169 F.3d 1255, 1278 (10th Cir. 1999).  Applying these standards to the facts before us here, we conclude that the district court did not err in relying on the amount determined by the Virginia DCSE as the total unpaid support obligation.

AFFIRMED.