# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2080

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDWARD W. KLINZING,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01-CR-141—**Charles N. Clevert**, *Judge.*

ARGUED OCTOBER 30, 2002—DECIDED JANUARY 9, 2003

Before FLAUM, *Chief Judge*, and BAUER, and DIANE P. WOOD, *Circuit Judges.*

FLAUM, *Chief Judge.* Edward Klinzing appeals his conviction under 18 U.S.C. § 228(a)(3), better known as the Deadbeat Parents Punishment Act ("DPPA"), for willful failure to pay court ordered child support. Klinzing argues first that the DPPA is an unconstitutional exercise of the federal commerce power. Second, he contends that the DPPA denies equal protection of the laws to delinquent parents who live in different states than their children and that it inhibits delinquent parents' fundamental right to travel. Third, Klinzing claims that the district court's admission of certain business records into evidence without foundation testimony by the record

custodian, as permitted by Rules 803(6) and 902(11) of the Federal Rules of Evidence, violated his Sixth Amendment right to confront witnesses. For the reasons stated below, we reject Klinzing's constitutional arguments and affirm his conviction.

## BACKGROUND

Edward Klinzing ("Klinzing") and Pamela Edwards (now Kerce) married in 1977 in Lake County, Illinois, and together had three sons, Christopher, Craig, and Cory Klinzing. After Klinzing and Pamela divorced in 1989, Pamela gained full custody of their sons and Klinzing was ordered by the court to pay child support until the boys reached adulthood. Soon after the divorce and during all years relevant to the criminal charges against Klinzing, Pamela and the three boys moved to Tennessee while Klinzing remained in Illinois and later moved to Wisconsin. Klinzing did not visit or maintain a relationship with his sons after they moved to Tennessee with Pamela.

Klinzing fell behind in his child support payments as early as 1991 and sporadically made payments through 1998. At the time of his arrest in July 2001, Klinzing owed $78,574.37 in past due child support obligations. The indictment charged Klinzing under the DPPA, 18 U.S.C. § 228(a)(3), with one count of willful nonpayment of court ordered child support for longer than two years and in excess of $10,000, which constituted a felony carrying a maximum two year prison term. Klinzing filed a motion to dismiss the indictment on equal protection, due process, and Commerce Clause grounds. The magistrate judge and the district court both denied Klinzing's motion to dismiss, finding no constitutional infirmities in the DPPA or its application to delinquent parents who live in different states from their children.

Before trial, the government filed a motion *in limine* regarding its intent to offer various business records as evidence pursuant to FED. R. EVID. 803(6). As amended in 2000, Rule 803(6) permits introduction of business records without foundation testimony from the record custodian so long as the records are authenticated according to FED. R. EVID. 902(11). At trial, the government offered these business records accompanied by written certifications in compliance with Rule 902(11). The district court ruled some of the proffered documents inadmissible under amended Rule 803(6) because they lacked the inherent reliability required under the hearsay exception, but admitted five W-2 wage statements over Klinzing's objection. Klinzing offered some exhibits of his own, but he neither testified himself nor called any witnesses on his behalf.

The jury convicted Klinzing of willful failure to pay child support as charged under the DPPA, and the district court sentenced him to serve 21 months in prison and pay $84,989.87 restitution. Klinzing now appeals his conviction, resurrecting the constitutional equal protection and Commerce Clause challenges that he asserted in his motion to dismiss and arguing that the admission of his W-2 forms into evidence under amended FED. R. EVID. 803(6) violated his rights as a criminal defendant under the Confrontation Clause.

## ANALYSIS

### A. CONSTITUTIONALITY OF THE DPPA

The DPPA, formerly called the Child Support Recovery Act ("CSRA"),[1] punishes the willful nonpayment of past

---

[1] For the purpose of this appeal there is no meaningful difference between the earlier CSRA and later DPPA, and for simplicity's

(continued...)

due child support obligations owing to children who live in a different state than their noncustodial parent. *See* 18 U.S.C. § 228(a). Nearly all states criminalize the willful failure to pay child support and most utilize the Uniform Reciprocal Enforcement of Support Act ("URESA") to extradite interstate deadbeat parents and process interstate child support enforcement orders. Recognizing that such interstate extradition and enforcement provided a cumbersome, slow, and tedious method of collecting child support obligations from deadbeat parents, Congress passed the DPPA. The sole purpose of the legislation is to assist states in recovering past due child support payments beyond their borders.

Klinzing attacks the constitutionality of the DPPA on both equal protection and Commerce Clause grounds. In particular, he argues that the DPPA denies equal protection by irrationally criminalizing the willful nonpayment of child support by parents who live in a different state than their children, and that it exceeds the scope of Congress's authority under the Commerce Clause to "regulate commerce among the several States." U.S. CONST. art. I,

---

(...continued)

sake we will refer to the statute only as the DPPA. Congress enacted the Child Support Recovery Act in 1992 to strengthen state enforcement of child support orders and improve chances of collecting billions of dollars in unpaid child support from interstate delinquent parents. 138 CONG. REC. at H7326 (daily ed. Aug. 4, 1992). In 1998 Congress revised the CSRA, 18 U.S.C. § 228, by creating two offense levels for willful failure to pay court ordered child support obligations based on the amount owed and length of time the debt remained unpaid. At that time Congress also made it a crime to travel in interstate commerce with intent to evade substantial past due child support obligations. The revised statute also received a new name, the Deadbeat Parents Punishment Act. Pub. L. No. 105-187, § 2, 112 Stat. 618 (June 24, 1998), codified at 18 U.S.C. § 228 (1999).

§ 8. We review these constitutional challenges to a federal statute *de novo*. *United States v. Wilson*, 159 F.3d 280, 285 (7th Cir. 1998); *United States v. Lewitzke,* 176 F.3d 1022, 1025 (7th Cir. 1999).

## 1.   COMMERCE CLAUSE

Five years ago this court joined nine federal circuit courts in affirming the constitutionality of the DPPA as a valid exercise of federal commerce power. *See United States v. Black*, 125 F.3d 454 (7th Cir. 1997); *United States v. Williams*, 121 F.3d 615 (11th Cir. 1997); *United States v. Crawford*, 115 F.3d 1397 (8th Cir. 1997); *United States v. Bailey*, 115 F.3d 1222 (5th Cir. 1997); *United States v. Johnson*, 114 F.3d 476 (4th Cir. 1997); *United States v. Parker*, 108 F.3d 28 (3d Cir. 1997); *United States v. Bongiorno*, 106 F.3d 1027 (1st Cir. 1997); *United States v. Hampshire*, 95 F.3d 999 (10th Cir. 1996); *United States v. Mussari*, 95 F.3d 787 (9th Cir. 1996); *United States v. Sage*, 92 F.3d 101 (2d Cir. 1996). Since then several circuits have reconsidered the issue in light of the Supreme Court's decision in *United States v. Morrison*, 529 U.S. 598 (2000) (concluding that the civil remedy provision of the Violence Against Women Act exceeded Congress' Commerce Clause authority because it regulated noneconomic, wholly intrastate activity that did not substantially affect interstate commerce), and in every case the court reaffirmed the constitutionality of the DPPA. *See United States v. Monts*, 311 F.3d 993 (10th Cir. 2002); *United States v. King*, 276 F.3d 109 (2d Cir. 2002); *United States v. Lewko*, 269 F.3d 64 (1st Cir. 2001); *United States v. Faasse*, 265 F.3d 475 (6th Cir. 2001) (en banc). Against the heavy weight of this authority and without advancing a new argument on his behalf, Klinzing still claims that the DPPA is unconstitutional. Because we agree with our analysis in *Black* that an interstate child support obligation is a "thing" in commerce

and thus properly regulated by Congress, and because we are not otherwise persuaded to part ways from our ten sister circuits on this issue, we hold today that the DPPA is a constitutional exercise of the federal commerce power.

The Supreme Court in *United States v. Lopez*, 514 U.S. 549 (1995), delineated three broad areas that Congress may regulate using its commerce power: (1) the channels of interstate commerce, (2) the instrumentalities of, or persons or things in, interstate commerce, and (3) activities that substantially affect interstate commerce. *Id.* at 558. In *Black* we held that a parent's intentional failure to pay child support debts created a "conscious impediment to interstate commerce" that was properly regulated by Congress under the second prong of *Lopez*. *Black*, 125 F.3d at 460. Since a child support obligation is an economic debt and the DPPA only reaches those debts which are owed by parents living out of state, we decided that a past due child support payment constituted a "thing" in interstate commerce. *Id.* We noted too that Congress has power not only to regulate active interstate commerce, but to protect against and punish willful interference with interstate commerce. *Id.* (analogizing the DPPA to the Hobbs Act, 18 U.S.C. § 1951, which criminalizes acts of extortion, robbery, or physical violence that interfere with interstate commerce). We therefore concluded that the DPPA fit cleanly "within the strictures of Congress' Commerce Clause power." *Id.* at 461.

Klinzing acknowledges our decision in *Black* but insists we were wrong to find an unpaid, overdue child support payment a "thing" in interstate commerce. First, Klinzing characterizes the "thing" at issue as an obligation to provide financial support to one's children arising from a local court order entered on authority of state law. According to Klinzing, legal obligations such as these are not commerce merely because they involve an order to pay

money. We disagree. The notion of "child support" comprises more than a moral duty to care for one's children, and state laws recognize this by requiring noncustodial parents to pay money in satisfaction of their parental duties. When this duty takes the form of a parent in one state ordered to pay support money to a parent in another state, it is "functionally equivalent" to an interstate contract, with the payments usually traveling interstate by mail, wire, or electronic transfer. *Black*, 125 F.3d at 460. Klinzing's argument that the underlying support obligation is simply a local court order authorized by state law and therefore not interstate commerce is without merit, especially given the expansive way courts have defined "commerce" when reviewing legislation enacted by Congress under the Commerce Clause.

Second, Klinzing argues that the DPPA impermissibly criminalizes abstention from commerce because the *non*-payment of a debt cannot be construed as commerce within reach of Congress' regulatory authority. Klinzing suggests that if Congress can criminalize the failure of parents to pay child support under the DPPA, then Congress could criminalize the failure of business owners to open nondiscriminatory hotels under the Civil Rights Act of 1964. *See Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241 (1964) (holding that Congress had authority under Commerce Clause to prohibit discrimination in motel accommodations because such discrimination constituted a willful impediment to interstate travel and commerce). In both cases, Klinzing contends, the individual is punished for impeding interstate commerce by choosing not to participate in interstate commerce at all. The problem with Klinzing's analogy is that deadbeat parents, unlike hypothetical business owners, are not lawfully abstaining from interstate commerce. The DPPA only reaches parents whose past due child support obligations are owed in another state and punishes these deadbeat parents for

choosing to willfully evade their legal obligations. In other words, the DPPA punishes an affirmative choice to break the law and not a passive choice to refrain from participating in interstate commerce.

We remain convinced that an interstate child support obligation is a thing in commerce which may properly be regulated by Congress using its commerce power. Despite Klinzing's claim that the DPPA encroaches upon states' rights to regulate domestic relations, the DPPA expressly avoids interference with the underlying child support obligations imposed by the states. The DPPA only applies criminal punishment to unlawful conduct that implicates interstate commerce: namely, the willful evasion of economic support obligations by parents who live in different states from their children. We therefore find the DPPA to be a permissible exercise of Congress' power to legislate under the Commerce Clause.

## 2.  EQUAL PROTECTION

Klinzing also challenges the constitutionality of the DPPA on equal protection grounds. Specifically, he contends that the DPPA either impermissibly burdens a deadbeat parent's fundamental right to travel, or irrationally treats deadbeat parents who live in a different state from their children differently from deadbeat parents who live in the same state as their children. Klinzing correctly states that the right to travel is fundamental and any burden on it is subject to strict scrutiny, but he wrongly concludes that the DPPA infringes this right. In the case of deadbeat parents, any impediment to travel based on a fear of criminal prosecution under the DPPA results from the parents' own willful failure to pay child support and not the requirements of the statute. A parent under a local court order to pay child support is entirely free to move to a different state from his or her children without prosecu-

tion under the DPPA. It is only when the parent chooses not to abide by the court order and willfully evades his support obligations while living out of state that the DPPA makes the interstate conduct criminal. If anything impedes Klinzing's right to travel, it is his own willful evasion of his child support obligations and not the DPPA.

Klinzing also argues that the DPPA violates equal protection because it draws a distinction among deadbeat parents that is not rationally related to a legitimate government objective. According to Klinzing it is not rational to base federal criminal jurisdiction on a factor outside the parent's control, such as where one's children live with their custodial parent. Klinzing claims the DPPA violates equal protection when it treats deadbeat parents living in a different state from their children differently from deadbeat parents living in the same state as their children. We find no equal protection violation in this case because the DPPA's differential treatment of intrastate and interstate deadbeat parents is rationally related to a legitimate government interest. We stated in *Black* that the statute passed the rational basis test because "Congress expressly recognized that collecting past due child support obligations from out-of-state deadbeat parents has outgrown state enforcement mechanisms." *Id.*, 125 F.3d at 458. The problem of deterring and punishing the most egregious interstate deadbeat parents has not abated in the last five years and still remains a legitimate government interest. The availability of federal criminal punishment for interstate deadbeat parents makes it less likely that parents will successfully shirk their financial responsibilities by fleeing to another state. We therefore conclude that the DPPA is rationally related to a legitimate government interest and passes constitutional muster.

**B.  CONSTITUTIONALITY OF FED. R. EVID. 803(6)**

Klinzing asks this court to find the 2000 amendment to
FED. R. EVID. 803(6) unconstitutional because it violates
his rights as a criminal defendant under the Confronta-
tion Clause. As amended, Rule 803(6) provides that the
business records exception to the hearsay rule may be
satisfied "by certification that complies with Rule 902(11),
Rule 902(12), or a statute permitting certification, unless
the source of information or the method or circumstances
of preparation indicate lack of trustworthiness." Under
Rule 902(11) a party may authenticate a business record
through a written declaration by a qualified custodian
that the record meets the necessary foundational require-
ments. Klinzing contends that Rule 803(6) violates his
right to confront witnesses against him because the
amended rule does not require the government to prove
either the reliability of business records through founda-
tion testimony or the unavailability of the foundation
witness. Klinzing also claims that the amendment does
not derive from a firmly rooted hearsay exception. In
response the government argues that the amended rule
is constitutional on its face for two reasons. First, the
amendment to Rule 803(6) derives from a firmly rooted
hearsay exception for business records. And second, the
amendment makes the rule for admissibility of domes-
tic business records the same as for foreign business
records, which has repeatedly withstood Confrontation
Clause challenges. Klinzing's facial challenge to the consti-
tutionality of amended FED. R. EVID. 803(6) is an issue
of first impression in this and other courts of appeal.

Despite the novelty of the question, we are not entirely
without guidance on this issue. Amended Rule 803(6), and
related authentication Rules 902(11)-(12), attempt to
place domestic business records on par with foreign busi-
ness records, whose rule for admissibility is codified at 18

U.S.C. § 3505. Both Rule 803(6) and § 3505 permit admission of pre-certified business records into evidence without confrontation of the record keeper by the opposing party, in this case a criminal defendant. Rule 803(6) was amended to avoid the expense and inconvenience of producing time-consuming foundation witness testimony in situations where the authenticity of the business records could be confirmed by written declaration pursuant to Rules 902(11)-(12). *See* FED. R. EVID. 803 advisory committee's note (stating that Rule 902(11), Rule 902(12), and § 3505 provide adequate assurance of authenticity for business records without foundation testimony).

When the Supreme Court considered the constitutionality of admitting certain hearsay evidence in criminal trials, it held that the Confrontation Clause is satisfied when the proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule. *White v. Illinois*, 112 S.Ct. 736 (1992) (holding that admission of excited utterances and medical examination evidence without foundation testimony or proving unavailability of witness did not violate Confrontation Clause of criminal defendant facing sexual assault charges). The reason for this is that "a statement that qualifies for admission under a 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability." *Id.* at 743.

Before it was amended, Rule 803(6) was considered a firmly rooted hearsay exception for certain business records that had adequate indicia of reliability. In fact, the foreign business records exception, § 3505, derived specifically from an earlier version of Rule 803(6) and has itself withstood Confrontation Clause attacks in several circuits. *See United States v. Garcia Abrego*, 141 F.3d 142 (5th Cir. 1998); *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994); *United States v. Sturman*, 951 F.2d 1466 (6th Cir. 1991); *United States v. Miller*, 830 F.2d 1073 (9th Cir. 1987). Given

this history, we see no reason to conclude that Rule 803(6) is any less firmly rooted as a hearsay exception now that it permits admission of pre-certified domestic business records without foundation testimony. Thus, we hold that amended Rule 803(6) does not on its face violate a criminal defendant's rights under the Confrontation Clause.[2]

## CONCLUSION

We reject Klinzing's constitutional challenges to the DPPA and amended FED. R. EVID. 803(6), and we AFFIRM his conviction.

---

[2] Klinzing does not mount an "as applied" challenge to the constitutionality of Rule 803(6). We note, however, that it appears from the trial transcript that the government complied with all requirements of Rules 803(6) and 902(11) in seeking to admit business records into evidence without foundation testimony of the record keepers. The trial judge reviewed the proposed evidentiary records and excluded some because they did not contain adequate indicia of reliability and did not come within the scope of business records intended for admission as hearsay exceptions under Rule 803(6). As a result, only five W-2 wage statements were eventually admitted under the amended rules. While Klinzing objected on the grounds that their admission violated his constitutional rights, he neither deposed nor called the record keepers to the stand for cross-examination as was his right. Nor did he ever present evidence that the information in the admitted W-2s was inaccurate or incomplete. Thus, even if we found the amended rules violated his rights under the Confrontation Clause, the admission of the documents constituted harmless error.

No. 02-2080                                                     13

A true Copy:

    Teste:

                          _____

                          *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*