FILED
United States Court of Appeals
Tenth Circuit

June 29, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

CAN D. PHUNG, M.D.,

      Defendant–Appellant.

No. 09-6147
(D.C. No. 5:08-CR-00131-M-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

Can D. Phung appeals his convictions on fifty-one counts of knowingly and

intentionally dispensing a controlled substance outside the usual course of professional

medical practice without legitimate medical purpose in violation of 21 U.S.C.

§ 841(a)(1), one count of health care fraud in violation of 18 U.S.C. § 1347(1), and one

---

[*] The case is unanimously ordered submitted without oral argument pursuant to
Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not
binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. The court generally disfavors the citation of orders and judgments;
nevertheless, an order and judgment may be cited under the terms and conditions of 10th
Cir. R. 32.1.

count of altering records in a federal investigation in violation of 18 U.S.C. § 1519. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Phung first argues that the evidence presented at trial was insufficient to support his convictions. We review de novo claims of insufficient evidence. United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997). In so doing, we must view the evidence and all reasonable inference to be drawn therefrom in the light most favorable to the government. United States v. Monts, 311 F.3d 993, 1000 (10th Cir. 2002). A conviction may be reversed only if "no reasonable juror could have reached the disputed verdict." United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997).

**A**

Phung does not challenge any specific count of conviction under 21 U.S.C. § 841(a)(1). Rather, he argues generally that the evidence at trial established nothing more than poor recordkeeping and isolated mistakes made in good faith. We disagree.

"A practitioner has unlawfully distributed a controlled substance [in violation of § 841(a)(1)] if she prescribes the substance either outside the usual course of medical practice or without a legitimate medical purpose." United States v. Nelson, 383 F.3d 1227, 1231-32 (10th Cir. 2004).[1] The fifty-one charged violations of § 841(a)(1) related

_____

[1] Nelson's holding notwithstanding, Phung argues that the government was required to prove that drugs were dispensed outside the usual course of medical practice and without a legitimate medical purpose based on the use of the conjunctive in the

Continued . . .

2

to specific prescriptions Phung provided to seven individuals. Five of these individuals, including an undercover agent who posed as a patient, testified at trial in similar fashion. Each averred that they visited Phung's solo medical practice and that Phung prescribed high doses and large quantities of narcotic painkillers and other controlled substances following little or no examination. A sixth "patient" averred that she never even visited Phung's office, but her husband obtained several prescriptions for controlled substances in her name simply by showing Phung her driver's license.

One witness testified that she "didn't have to tell [Phung] much of anything, just what I wanted." Another stated, "I just told him what I wanted."[2] Both were able to obtain prescriptions for Lortab, Soma, and Xanax—a combination that "raise[d] red flags" for the Oklahoma Bureau of Narcotics. Likewise, a third witness obtained a prescription for painkillers on his first visit to Phung without even entering an exam room; Phung simply spoke to him in the lobby of his practice. When the undercover agent requested Oxycotin from Phung for alleged ankle pain, he responded that an ankle injury did not justify Oxycotin, but said, "Tell me another reason to give you medicine." After she mentioned undiagnosed shoulder pain, Phung provided the agent with a prescription for Percocet, a drug with the same active ingredient as Oxycotin.

charging documents. Because it does not affect our analysis, we assume for purposes of this order and judgment that the government was required to prove both elements.

[2] Phung also counseled this witness to fill prescriptions at various pharmacies so that Phung would avoid scrutiny from the Drug Enforcement Agency.

Two medical experts also testified against Phung. Both opined that Phung's conduct fell outside the usual course of medical practice. In the words of one of these experts, Phung's actions with respect to all seven individuals "were not done in a generally accepted medical practice," and the prescriptions "were not written for appropriate conditions."

This evidence is sufficient to support Phung's convictions. See United States v. Moore, 423 U.S. 122, 142 (1975) (evidence that doctor "gave inadequate physical examinations or none at all," "took no precautions against [prescription] misuse or diversion," and "did not regulate . . . dosage" sufficient to prove that "conduct exceeded the bounds of 'professional practice'" and thus support a conviction under § 841(a)); United States v. Feingold, 454 F.3d 1001, 1004-05 (9th Cir. 2006) (evidence that doctor prescribed large quantities of controlled substances without conducting physical examinations or recording bases for the prescriptions in medical charts "overwhelmingly demonstrated his disregard for proper prescribing practices" and thus supported a conviction under § 841(a)); United States v. Tran Trong Cuong, 18 F.3d 1132, 1139 (4th Cir. 1994) (prescribing pain killers for "nebulous" ailments after "superficial physical examinations" sufficient to support § 841(a) conviction).

**B**

Phung also challenges the sufficiency of the evidence to support his conviction under 18 U.S.C. § 1347(1). He contends that although he submitted improper billing codes that resulted in Medicaid payments that were higher than the fees to which he was

entitled, the evidence shows only that he misunderstood the Medicaid billing system. Again, we disagree.

To convict under § 1347(1), the government must prove that a defendant "knowingly and willfully executed or attempted to execute a scheme to defraud a health care benefit program or a scheme to obtain a health care benefit program's money or property through false pretenses, representations, or promises." United States v. Franklin-El, 555 F.3d 1115, 1122 (10th Cir. 2009) (quotations omitted). In its case in chief, the government established that Phung routinely submitted claim forms to Medicaid with billing codes indicating visits from new patients, lengthy examinations, and medical decisionmaking of moderate to high complexity for brief visits from existing patients that involved simple medical analyses. Phung also billed Medicaid for office visits from a patient who never visited his office—but whose husband obtained prescriptions in her name—using a billing code that corresponds with a forty-five-minute visit.

Further, a Medicaid billing expert testified that a doctor who had been practicing as long as Phung would be familiar with these billing codes. Phung himself testified that he understood how to use the billing codes. Although Phung also stated that he was simply mistaken about his improper coding, the jury acted within the bounds of reason when it rejected his version of events and concluded that he knowingly and willfully entered higher billing codes as part of a scheme to defraud Medicaid. See Carter, 130 F.3d at 1439.

## C

In his last sufficiency of the evidence claim, Phung argues that his conviction under 18 U.S.C. § 1519 was not supported by sufficient evidence because he did not make a false entry, and he did not know he was the subject of a federal investigation. Section 1519 makes it a crime to "knowingly alter[] . . . or make[] a false entry in any record . . . with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . , or in relation to or contemplation of any such matter."

The Oklahoma Healthcare Authority obtained patient records from Phung's office in April 2007. Approximately one year later, those same records were subpoenaed by the Department of Health and Human Services. A special agent with that agency testified at trial that he compared these two records—which should have been duplicate copies—and found substantial information had been added to the later-subpoenaed versions so that it appeared that Phung had conducted more detailed examinations than he had actually conducted.

Phung claimed that he transcribed this added information from notebooks in which he recorded contemporaneous examination notes because he was unable to complete the charts at the time of the examinations. However, the newly-added information was inconsistent with testimony regarding the minimal or non-existent exams conducted by Phung. In one particularly damning example, Phung added information to a patient's chart indicating that her weight remained stable over approximately five months of visits.

6

However, that patient was pregnant while she visited Phung—she gave birth just one week after her final visit—and testified that she gained significant weight during her pregnancy. Further, Phung failed to mention his contemporaneous notebooks in a hearing before a state medical review board that resulted in the suspension of his medical license partially based on his failure to maintain proper records.

Based on this evidence, it was reasonable for the jury to infer that Phung intended to obstruct justice by adding false information to his records and delivering those falsified records to a federal agency.

## II

In addition to his sufficiency of the evidence claims, Phung advances two claims of evidentiary error. First, he contends the district court erred in permitting a government medical expert to testify that Phung's medical license had been suspended. Second, Phung argues that the court erred in refusing to admit medical records from other doctors who prescribed controlled substances to Phung's patients during the same time frame that Phung did. We generally review evidentiary rulings for abuse of discretion. See Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995). However, if an evidentiary ruling violated a defendant's constitutional right to present a defense, we review it de novo. See United States v. Markey, 393 F.3d 1132, 1135 (10th Cir. 2004).

## A

Testimony that Phung's medical license had been suspended came after a highly irregular procedural history. Prior to trial, Phung filed a motion in limine to preclude this

7

evidence. The court denied that motion, but requested proposed limiting instructions. Phung renewed his objection before a government witness was set to testify and provided additional authority for his position. Before the court ruled, however, the government represented that it would not ask the witness whether Phung's license had been suspended. When counsel began questioning the witness about statements Phung made during the medical board hearing, Phung objected to this line of questioning. The court overruled the objection, but granted Phung a "continuing objection" to these questions. Moments later, despite its representation, the government asked the witness whether Phung's license had been suspended, and the witness responded in the affirmative.

We are extremely troubled by this turn of events. District courts must be able to rely on representations of counsel with respect to the scope of questioning in order to make proper evidentiary rulings. This case provides an excellent example of that need. Because counsel stated that there would be no questions concerning the outcome of the medical board hearing, the court did not squarely rule on Phung's renewed objection during trial. Nevertheless, the district court did rule on Phung's motion in limine, and we may review that decision, which ultimately was effective, for abuse of discretion. See United States v. Mejia-Alarcon, 995 F.2d 982, 986 (10th Cir. 1993) (motions in limine may preserve an objection under certain circumstances present here).

Phung argues that testimony regarding the suspension of his license was irrelevant and substantially more prejudicial than probative. See Fed. R. Evid. 401, 402, 403. But this evidence was probative in several respects. First, information regarding the medical

8

hearing was a necessary part of the res gestae of this case because it provided the reason government officials had two copies of certain patient records obtained a year apart. That evidence formed the basis of count fifty-three—falsification of records in violation of 18 U.S.C. § 1519. Second, the fact that Phung's license was suspended in part for failing to keep adequate records rendered his testimony regarding his alleged contemporaneously recorded notebooks implausible. Threat of suspension for inadequate recordkeeping provided Phung with a powerful incentive to disclose the existence of patient notes to the medical review board. Phung's failure to mention these notes strongly supported the government's claim that the charts were simply falsified. Finally, the medical review board's finding that Phung dispensed narcotic drugs without medical need is obviously relevant to the charges under 21 U.S.C. § 841(a)(1).

Phung is correct that this evidence carried the potential for prejudice or confusion of the issues. Whenever an administrative body makes a finding that is closely related to the ultimate question put to the jury, there is a danger that jurors may simply defer to the administrative body. However, that danger was substantially mitigated by the court's limiting instruction, which stressed that the administrative hearing featured different rules of evidence and a lower burden of proof, and informed the jury that they were free to reject the board's findings. We further note that the government did not linger on the issue; the disputed testimony covers less than three transcript pages and the government twice cut off the witness to limit his testimony. Under these circumstances, we conclude the district court acted within its discretion.

9

**B**

Phung contends the court erred in ruling that the medical records of other doctors who treated Phung's patients were inadmissible. However, Phung dramatically overstates the breadth of the court's ruling. Phung asserts that the district court precluded him from introducing the other doctors' records and prohibited him from calling these doctors to testify as to disagreements within the medical community regarding the proper standard of care. In fact, after Phung provided an offer of proof, the court ruled the proposed witnesses were free to testify regarding their opinion of the proper standard of care, but that the charts were irrelevant.[3]

Phung argues the records were relevant to show other doctors' views regarding the generally accepted course of medical practice and their opinion with respect to medical need for certain prescriptions. But the records do not contain such opinions; they are simply the medical charts of individual patients. When Phung argued that the doctors were experts who could testify as to the usual course of medical practice and medical need standards, the government responded that "[t]hey would have to testify in the form of [an] opinion. It doesn't matter what they do." The court agreed: "I do concur on that." Counsel for Phung acknowledged: "Your Honor says that we can call" the other

_____

[3] Phung's counsel similarly misstated the court's ruling when he sought to preserve the record after the jury delivered its verdict. When counsel referred to "the patient charts from the other doctors that the Court ruled could not testify," the court immediately corrected him: "The Court's ruling was that the ten doctors could testify, but that the medical records could not come in."

10

physicians. Phung thus does battle with a straw man when he argues that the court excluded opinion testimony from other doctors.[4]

Even if the records could be found to be minimally relevant, the district court's exclusion of this evidence would be harmless beyond a reasonable doubt. See Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) (an otherwise valid conviction should not be set aside if error was harmless beyond a reasonable doubt). The only potentially relevant information contained in the record are the prescription histories for Phung's patients, but that information is entirely cumulative with admitted evidence. Patient prescription history reports were introduced into evidence showing the complete prescription history (including prescriptions from other doctors) of the four individuals for whom Phung sought to introduce medical records. In addition, Phung was permitted to question no fewer than six witnesses as to the prescriptions provided by these other doctors. Because the district court did not exclude any non-cumulative, relevant evidence in rejecting the medical records, Phung cannot prevail on this issue.

**III**

Finally, Phung argues that the district court erred in refusing to instruct the jury on

---

[4] Phung also asserts that he could not obtain meaningful testimony from the doctors without introducing the medical records. We disagree. Although the doctors likely would have been prohibited from reading from the records directly, see Strickland Tower Maint. v. AT&T Commc'ns, 128 F.3d 1422, 1430 (10th Cir. 1997), the records could have been used to refresh their memories pursuant to Fed. R. Evid. 612. In any event, because Phung opted not to call any of the doctors to the stand, we do not have a specific evidentiary ruling to review.

his theory of defense.  We review a district court's decision to omit a proffered instruction for abuse of discretion.  United States v. Butler, 485 F.3d 569, 572 (10th Cir. 2007).  "A criminal defendant is entitled to an instruction on his theory of defense provided that theory is supported by some evidence and the law."  United States v. Alcorn, 329 F.3d 759, 767 (10th Cir. 2003) (quotation omitted).  However, "a theory of defense instruction is required only if, without the instruction, the district court's instructions were erroneous or inadequate."  United States v. Williams, 403 F.3d 1188, 1195 (10th Cir. 2005).

We agree with the government that Phung's proffered instructions were little more than a closing argument in written from.  The jury was properly instructed as to Phung's good faith defense, the elements of each charge, and the burden of proof; nothing in Phung's proposed instructions (other than a fair amount of editorializing) was omitted from the instructions that were provided to the jury.  Because Phung has failed to demonstrate on appeal that the district court's instructions were inadequate or erroneous, he is not entitled to relief on this claim.[5]

_____

[5] Phung also argues that he was denied a fair trial as a result of cumulative error. In addition to the issues already discussed, Phung cursorily asserts two claimed errors at the end of his opening brief.  However, these arguments are not developed sufficiently and are accordingly waived.  See Wilburn v. Mid-South Health Dev., Inc., 343 F.3d 1274, 1281 (10th Cir. 2003) ("We . . . will not consider issues that are raised on appeal but not adequately addressed.").  Because we have identified at most one error below, see Part II.B, supra, Phung has not demonstrated reversible cumulative error.  See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998) ("Cumulative error analysis applies

Continued . . .

## IV

**AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge

---

where there are two or more actual errors; it does not apply to the cumulative effect of non-errors.").