**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 17 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ABNER YOUTS,

      Defendant-Appellant.

No. 99-3215

Appeal from the United States District Court
for the District of Kansas
(D.C. No. CR-98-10130-01-WEB)

Steven K. Gradert, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on the brief), Wichita, Kansas, for Defendant-Appellant.

Nancy Landis Caplinger, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with her on the brief), Topeka, Kansas, for Plaintiff-Appellee.

Before **SEYMOUR**, Chief Judge, **HENRY** and **MURPHY**, Circuit Judges.

**SEYMOUR**, Chief Judge.

Abner Youts appeals from an adverse jury verdict.  As the parties' oral arguments showed, the events leading up to his criminal conviction under 18 U.S.C. § 1992 for wrecking a train are unusual and give rise to a number of interesting parallels in modern folk music.  We begin with the facts.


**I**

"He made that freight train boogie, as he rolled down the line."[1]

In the early morning hours of January 10, 1994, after an evening of misadventure, Abner Youts and Richard Nesbitt needed a ride home.  The pair set out on foot and ended up at the Union Pacific Railyard in Wichita, Kansas, where they boarded two idling locomotives that were connected together.  After playing with the controls, they figured out how to move the trains back and forth.  Mr. Youts remarked to Mr. Nesbitt that, as a boy, he had always loved trains and wanted to be an engineer.[2]  Mr. Youts then decided to drive the train home.

Upon arriving at a point on the tracks approximately half a block from his house, Mr. Youts stopped the train, let Mr. Nesbitt off, and decided to send the

---

[1]John Denver, *Choo Choo Ch'Boogie*, *on* ALL ABOARD (Sony/Wonder 1997).

[2]"All the things I did when I was just a kid
How far away those memories appear.
I guess its plain to see they still mean a lot to me
'Cause my ambition was to be an engineer."
John Denver, *Daddy What's A Train?*, *on* ALL ABOARD (Sony/Wonder 1997).

train back through town. He put the train into reverse at full throttle and disembarked. The train got as far as a curve in the tracks in downtown Wichita. The normal speed for this curve is ten miles per hour. The driverless train took it at fifty-six miles per hour and derailed.[3] One locomotive car ended up lying in the street and the other landed on its side in the dirt next to the tracks. Although no one was hurt, the derailment caused Union Pacific and the City of Wichita a total of $234,145 in damage and clean-up costs.

As a result of anonymous tips to the Wichita Crimestoppers hotline, investigating authorities learned Mr. Nesbitt and Mr. Youts may have been involved in the offense. Eventually, Mr. Nesbitt gave a confession that detailed their activities on the evening in question and the two men were each indicted on one count of violating 18 U.S.C. § 1992, the federal train wreck statute. Mr. Nesbitt pled guilty and agreed to testify against Mr. Youts. The case against Mr. Youts was tried before a jury, which found him guilty. He was sentenced to 46 months in prison and ordered to pay $234,145 in restitution.

---

[3]"Nine hundred thousand tons of steel, out of control
She's more a roller coaster than the train I used to know. . .
She wasn't built to travel at the speed a rumour flies
These wheels are bound to jump the tracks before they burn the ties."
The Grateful Dead, *Tons of Steel*, *on* IN THE DARK (Arista 1987); *see also* The Grateful Dead, *They Love Each Other*, *on* REFLECTIONS (Round Records 1976) ("It's nothing they explain. It's like a diesel train – you better not be there when it rolls over.").

This appeal followed. Mr. Youts raises three claims: first, he contends the statute required a showing of specific intent to wreck the train, and the evidence of his specific intent was insufficient to support the jury's determination of guilt; second, he asserts that evidence of his other crimes was improperly admitted; and third, he argues that the district court mishandled an allegation of juror misconduct. For the reasons discussed below, we deny each of these claims.

## II

### A. Sufficiency of the Evidence – Intent

Although we review a challenge to the sufficiency of the evidence de novo, we do so while viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government. *United States v. Haslip*, 160 F.3d 649, 653 (10th Cir.1998). We will reverse "'only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 652 (*quoting United States v. Wacker*, 72 F.3d 1453, 1462-63 (10th Cir. 1995)). We review questions of statutory interpretation de novo. *See United States v. King*, 979 F.2d 801, 802 (10th Cir.1992).

The federal train wreck statute punishes anyone who "*willfully* derails, disables, or wrecks any train, engine, motor unit, or car used, operated, or employed in interstate or foreign commerce by any railroad." 18 U.S.C. § 1992

-4-

(emphasis added). Mr. Youts contends the statute should be read to require proof of a specific intent to disable, derail, or wreck the train. He argues there was no evidence he actually wanted the train to wreck. Rather, he maintains the evidence indicated that he took the train on impulse and that he meant to return it to the station when he was finished.

Section 1992 requires a showing of "willfulness." The term "willful" is frequently used in criminal statutes, but it has a less than clear statutory and common law history. *See* WAYNE R. LAFAVE & AUSTIN W. SCOTT, CRIMINAL LAW § 3.4(b), at 213-14 & n.7 (2d ed. 1986). In response to the ambiguity of such common law terms, the Model Penal Code delineated four categories of culpable mens rea, corresponding to actions taken purposely, knowingly, recklessly, or negligently. MODEL PENAL CODE § 2.02(2)(a)-(d). The Model Penal Code parallels many judicial decisions in declaring that knowing conduct is sufficient to establish willfulness. *See id.* § 2.02(8) ("A requirement that an offense be committed wilfully is satisfied if a person acts knowingly with respect to the material elements of the offense . . ."); *see also United States v. M.W.*, 890 F.2d 239, 241 (10th Cir. 1989) (holding that, for purposes of federal arson statute, "'willfully and maliciously' includes acts done with the knowledge that burning of a building is the practically certain result"); *United States v. Barber*, 594 F.2d 1242, 1244 (9th Cir. 1979) (equating "willfully" with "knowledge of the facts

constituting the offense") *abrogated on other grounds*, *United States v. Foster*, 133 F.3d 704 (9th Cir. 1998) (en banc); *accord United States v. Johnson*, 14 F.3d 766, 768 (2d Cir. 1994).

In addition, the legislative history of section 1992 indicates Congress did not intend the statute to contain a specific intent requirement. A House Committee Report on the legislation recommended that the words "and maliciously" be stricken after "willfully," because the committee believed "that the words would place too great a burden on the prosecution of an offense under the bill." MAKING IT A CRIME TO WRECK OR ATTEMPT TO WRECK A TRAIN ENGAGED IN INTERSTATE COMMERCE, H.R. REP. NO. 76-2175 (3d Sess. 1940). "Maliciously," like willfully, is a nebulous term. *See* LAFAVE & SCOTT, § 3.4(b), at 214. In this context, however, it indicates a heightened level of culpability akin to specific intent. Congress rejected this requirement, and removed the language from the bill. Consequently, the willfulness language in section 1992 is best understood as a knowledge requirement.

"A person acts knowingly with respect to a material element of an offense when[,] . . . if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result." MODEL PENAL CODE § 2.02(2)(b)(ii). *Cf. id.* § 2.02(2)(a)(i) ("A person acts purposely with respect to a material element of the offense when[,] . . . if the element involves . . . a result

-6-

[of his conduct], it is his conscious object . . . to cause such a result."). The natural, probable consequences of an act can satisfactorily evidence the state of mind accompanying it. *See United States v. White*, 557 F.2d 233, 236 (10th Cir. 1977) (per curiam). That showing has been met here. The natural, probable, and practically certain consequence of sending a driverless locomotive down curving tracks at full speed will be the result punished by the statute.

In holding that section 1992 does not require specific intent to wreck a train, we are in agreement with every other appellate court to consider this issue. In *United States v. Dreding*, 547 F.2d 471 (9th Cir. 1976) (per curiam), the defendant was a transient who was riding a train and turned a device that controlled the train's braking system, hoping to slow the train so he could jump off. Unbeknownst to him, another train was ahead on the same track, requiring an emergency stop. Mr. Dreding's action impeded the train's braking ability and it collided with the other train. The Ninth Circuit found Mr. Dreding criminally liable, concluding that section 1992 was not limited to situations in which the specific intent to wreck a train could be established. *See id.* at 472. In *United States v. Turpin*, 707 F.2d 332 (8th Cir. 1983), the defendant killed someone and, to cover up the cause of death, placed the victim's body in a car which he parked across the railroad tracks. The Eighth Circuit held the government only had to prove Mr. Turpin knowingly made the tracks hazardous by intentionally parking a

car in the path of an oncoming train. *See id.* at 337; *see also Stanley v. United States*, 245 F.2d 427, 436 (6th Cir. 1957) (finding defendants who burned a railway bridge liable for subsequent train wreck).

Mr. Youts knowingly set in motion – literally and figuratively – the events which caused the train to wreck. That is all section 1992 requires. We hold that the jury was presented with sufficient evidence to find Mr. Youts guilty.

## B. Evidence of Other Crimes

"Never had such a good time in my life before.
I'd like to have it one time more.
One good ride from start to end.
I'd like to take that ride again."[4]

Mr. Youts' second claim of error stems from the district court's decision to allow the prosecution to introduce evidence of other crimes he engineered. We review the court's decision to admit this evidence for an abuse of discretion. *See United States v. Neal*, 718 F.2d 1505, 1509-10 (10th Cir. 1983).

Federal Rule of Evidence 404(b) governs the admissibility of evidence of a defendant's other criminal acts:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

---

[4]The Grateful Dead, *Might As Well*, *on* REFLECTIONS (Round Records 1976).

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

FED. R. EVID. 404(b). Where evidence is offered under Rule 404(b), the government bears the burden of showing that the proffered evidence is relevant to an issue other than character. *See United States v. Biswell*, 700 F.2d 1310, 1317 (10th Cir. 1983). The government must "articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred" from the other acts evidence. *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985). Our cases also require the trial court to identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom. *See id.* "[A] broad statement merely invoking or restating Rule 404(b) will not suffice." *Id.*

The government sought admission of the following evidence under Rule 404(b) to show identity, motive and intent: (1) on the evening of the train theft Mr. Youts burglarized the Luke Steel Company and stole a pick-up truck from it;[5] (2) on September 3, 1996, Mr. Youts was arrested while attempting to steal a boat from the Wichita Boathouse; and (3) on June 7, 1997, Mr. Youts climbed over the fence of the Murphy Tractor Company in Wichita and drove several pieces of

---

[5]In fact, the reason Mr. Youts was in need of a ride that evening was because he and Mr. Nesbitt had taken the stolen truck "mudding," driven it into a pond, and abandoned it. This pond was only a short distance from the Union Pacific Railyard.

heavy construction equipment, damaging them by crashing them into one another. He then stole a semi-truck and trailer, which he wrecked by driving it through the gate, down a city street, and into a light pole. Mr. Youts did not object to the admission of the pick-up truck theft because it was part of the underlying offense and part of the government's circumstantial evidence, but he did file a motion in limine objecting to the admission of the other two incidents.

At the hearing on the motion in limine the prosecutor stated she did not plan to offer the evidence of the boat and semi-truck incidents unless Mr. Youts took the stand. The court therefore delayed ruling on whether the evidence was admissible. On the first day of trial, however, defense counsel asked Mr. Nesbitt whether he had intended to wreck the train, and Mr. Nesbitt answered in the negative. Because of this exchange, the prosecutor requested permission to introduce the Rule 404(b) evidence in order to show Mr. Youts' intent. The court agreed to allow the evidence over Mr. Youts' objection on the grounds that it "may be relevant to show the defendant's intent, motive, identity and [lack] of mistake or accident." App., vol. III at 169.

Mr. Youts argues the court failed to specify the purpose for which the evidence was admitted, and merely invoked and restated Rule 404(b). As Mr. Youts correctly points out, we held in *Kendall* that a statement similar to that given here was not sufficiently specific. The government concedes the court

failed to articulate the specific purpose for the evidence and the inferences to be drawn therefrom at the time it decided to admit the evidence. The government contends this oversight was corrected when the court gave its limiting instructions to the jury. At the time the evidence[6] was introduced, and again in final instructions, the court instructed the jury to consider it only for the purpose of showing Mr. Youts' intent or identity. *See* App., vol. I tab 40 (Instruction 13); vol. III at 224. The government argues these instructions were sufficient to adhere to the requirements of *Kendall*.

We disagree. The language and reasoning of *Kendall* indicate that the court's Rule 404(b) articulation must occur *prior* to its decision whether to admit the evidence. The *Kendall* requirement was formulated to ensure that the "decision to admit or exclude be made *only after* issues and reasons are exposed and clearly stated." *Kendall*, 766 F.2d at 1437 (emphasis added). *See also United States v. Orr*, 864 F.2d 1505, 1510 (10th Cir. 1988) ("We have held that *before* a district court admits other acts evidence under 404(b), it must specifically state the purpose for which it is admitting the evidence . . . .") (emphasis added). It was therefore error for the court not to make the specific findings required by *Kendall* at the time it decided to admit the government's Rule 404(b) evidence.

---

[6]The prosecution only introduced evidence of the semi-truck incident, and did not introduce evidence of the attempted boat theft.

-11-

Nonetheless, the court's failure to adhere to *Kendall* is harmless so long as there is no substantial uncertainty about the correctness of the ruling and the purpose for admitting the evidence is readily apparent from the record. *See United States v. Record*, 873 F.2d 1363, 1375 n.7 (10th Cir. 1989) (quoting *Orr*, 864 F.2d at 1511). Both of these conditions are satisfied here.

In reviewing a trial court's decision to admit evidence under Rule 404(b), we are guided by the Supreme Court's opinion in *Huddleston v. United States*, 485 U.S. 681 (1988). *Huddleston* reflects an inclusive approach to Rule 404(b) evidence, observing that Rules 404-412 seek only to limit the uses, rather than to prohibit the introduction, of problematic evidence. *See id.* at 687-88. The Court concluded that "Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence." *Id.* at 689-90.

We keep this approach in mind as we apply the four-part test for admissibility set out in *Huddleston*. *Huddleston's* first two requirements are that the evidence must be offered for, and relevant to, a proper purpose. In this case the evidence was offered to prove identity and intent. These are proper uses for Rule 404(b) evidence under the language of the rule. The identity and intent of the train-wrecker were both disputed by the defense at trial, and the prosecutor only sought to introduce the evidence after the defense raised the issue of intent.

*Cf. United States v. Soundingsides*, 820 F.2d 1232, 1237 (10th Cir. 1987) (admission of evidence of prior bad acts to prove intent was error where defendant was charged with a general intent crime and intent was not a genuinely contested issue). The evidence is directly relevant to these purposes. "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston*, 485 U.S. at 685.

*Huddleston* next requires the trial court to make a Rule 403 determination whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice. *See id.* at 691. The trial court has broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value. *See United States v. Esch*, 832 F.2d 531, 535 (10th Cir. 1987). While admittedly prejudicial, the evidence here was also probative of Mr. Youts' distinct pattern of stealing heavy equipment. The use of this single piece of evidence was limited in the context of the whole trial, most of which focused on the eyewitness testimony of Mr. Nesbitt and the development of highly incriminating circumstantial evidence. In this context, we do not believe the trial court abused its discretion in finding the Rule 404(b) evidence more probative than prejudicial.

Finally, the trial court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted. *See Huddleston*, 485 U.S. at 691-92; *United States v. Fitzherbert*, 13 F.3d 340, 343 (10th Cir.1993); FED.R.EVID. 105. As previously noted, the court properly instructed the jury at the time the evidence was introduced and again during final instructions. The court therefore complied with the four requirements of *Huddleston.*

The second condition for harmless error is also satisfied here. The record and trial transcript clearly show that the Rule 404(b) evidence helped establish Mr. Youts' intent and identity as the second perpetrator. The district court's failure to make a specific articulation at the time it ruled the evidence admissible was therefore harmless.

## C.  *Juror Misconduct*

Mr. Youts finally argues the trial court improperly handled an allegation of juror misconduct. The trial court's decision as to how to proceed in response to allegations of juror misconduct or bias will not be reversed absent an abuse of discretion. *See United States v. McVeigh*, 153 F.3d 1166, 1185 (10th Cir. 1998). Where, as here, the defendant fails to raise the issue below, we review only for plain error. *See United States v. McDonald,* 933 F.2d 1519, 1524 (10th Cir.

1991). Plain error is that which affects substantial rights and undermines the "fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). The defendant bears the burden of demonstrating that he was prejudiced by the error before this court can grant relief. *United States v. Olano*, 507 U.S. 725, 734 (1993).

The incident Mr. Youts complains of occurred on the first day of the jury trial. During voir dire, the prosecutor mentioned that Pratt, Kansas, was her hometown. Later, as the jurors were leaving the courtroom, one juror leaned towards the prosecutor and said "Pratt, huh?" and smiled. App., vol. III at 173. The prosecutor did not respond to the comment, and the next day attorneys for both sides brought the matter to the attention of the court. Mr. Youts' attorney suggested several ways the court could address the matter, including questioning the juror for possible bias, replacing the juror with an alternate, and admonishing the jurors as a group. Both attorneys expressed the worry that singling out the juror by calling him before the judge for a separate inquiry might alienate or inflame him.[7] The court decided the best course of action was to re-admonish the jury as a group against contact with the parties and attorneys. Both attorneys agreed with this course of action.

---

[7]The record indicates the prosecutor was equally concerned about bias on the part of the juror because she feared he might have perceived her refusal to speak to him as a snub. *See* App., vol. III at 173-74.

Mr. Youts now argues that the trial court should have held a hearing to determine the meaning of the juror's remark and whether the juror was biased in favor of the prosecutor. He contends the Supreme Court's opinion in *Remmer v. United States*, 347 U.S. 227 (1954), requires us to remand for a post-trial hearing. *Remmer* held that contact with a juror about the matter before the jury is so presumptively prejudicial that, if it occurs, the trial court should hold an evidentiary hearing to determine the issue of prejudice. *Remmer's* presumption of prejudice does not apply, however, unless the contact or communication concerns the matter pending before the jury. *See United States v. Brooks*, 161 F.3d 1240, 1246 (10th Cir. 1998). The contact at issue here clearly did not.

In this case the juror's comment was unreciprocated, brief, and innocuous. During their colloquy, the court, the defense counsel, and the prosecutor all put forth sound reasons why admonishing the jury was the best course of action. In light of the nature of the contact and the court's sensible handling of the matter, we perceive no ground for reversal.

Mr. Youts' conviction is **AFFIRMED.**