**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RICHARD POWELL,

Defendant-Appellant.

No. 06-1201

District of Colorado

(D.C. No. 04-CR-514-EWN-02)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL**, **TYMKOVICH**, and **BALDOCK**, Circuit Judges.

The United States charged Richard Powell in connection with a massive drug conspiracy prosecution embracing some thirty-one defendants and 137 counts of criminal conduct. Mr. Powell was charged with sixteen counts, including conspiracy to possess and distribute cocaine in both its base and powder forms. 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). Twelve counts went to the jury, which convicted the defendant on ten. At sentencing, the district court found Mr. Powell had been previously convicted of at least two drug offenses and was therefore subject to mandatory life sentences on counts 1 and 38. The court

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Circ. R. 32.1.

sentenced Powell to concurrent life terms on seven other counts, and to a term of four years on count 37—use of a communication facility in the commission of a drug offense.

Mr. Powell appeals from the judgment against him, alleging numerous abuses of discretion in the trial court's evidentiary rulings, as well as insufficient evidence to support his conviction on counts 23, 96, and 97. Apart from the sufficiency issue, which the government concedes, we conclude that none of Mr. Powell's challenges holds merit.

## I. Officer Stanton's Testimony

At trial, police officer Steven Stanton testified as to the meaning of certain words—"nina," "yam," and "hizzone" among them—used in recorded conversations between the defendant and his alleged co-conspirators. Officer Stanton based his testimony on personal experience in prior drug investigations. Mr. Powell contends that the district court erred by admitting Officer Stanton's testimony as lay opinion. He also contends that Officer Stanton's testimony violated his Sixth Amendment confrontation right.

As an initial matter, we must determine the proper standard of review. Mr. Powell would have us review for harmless error, while the government contends that the defendant did not properly preserve the issue and must now demonstrate that any errors were plain. To preserve an evidentiary ruling for appeal, the

-2-

defendant must object during the course of trial, unless the issue was clearly raised and ruled on before proceedings commenced. *United States v. Harrison*, 296 F.3d 994, 1002 (10th Cir. 2002). Mr. Powell did not object at trial to Officer Stanton's testimony as a lay witness. He did, however, lodge an objection before trial. In a series of pre-trial proceedings, the government notified the court that it intended to call Officer Stanton as an expert witness. Mr. Powell objected to Stanton's testimony under any guise, arguing in part that Federal Rule of Evidence 701 prohibited the officer from testifying as a layman.

This pre-trial objection might have been sufficient to preserve the issue for appeal, had the district court based its rulings on Rule 701 grounds. But the district court did not. Instead, the court initially ignored Mr. Powell's Rule 701 argument and agreed to admit Officer Stanton as an expert witness under Rule 702. After trial began, the court switched course and refused to permit Officer Stanton to testify as an expert. Yet the defendant did not then renew his objection to Stanton's testimony under Rule 701. Consequently, at no time did the district court rule definitively on the defendant's Rule 701 objection. *See Harrison*, 296 F.3d at 1002 (holding that a party need not renew a pre-trial objection when the issue was "ruled upon without equivocation by the trial judge"); *see also* Fed. R. Evid. 103(a). When a defendant properly fails to preserve an issue for appeal, we will reverse only if the error is plain. *United States v. McDonald*, 933 F.2d 1519, 1524 (10th Cir. 1991).

A plain error is one that implicates substantial rights and seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *Id.* Officer Stanton's testimony, even if error, does not qualify. By the time Stanton offered his opinion about the meaning of various words in the defendants' recorded conversations, the jury had already heard testimony from six co-defendants claiming that those words were code and purporting to explain what the conspirators, including Mr. Powell, meant by them. Officer Stanton's testimony regarding the meaning of these words thus added little to the extensive evidence already on the record. The defendant fails to demonstrate how Officer Stanton's largely duplicative testimony infringed the defendant's right to a fair trial. *United States v. Bornfield*, 145 F.3d 1123, 1129 (10th Cir. 1998).

For the same reason, we reject Mr. Powell's Sixth Amendment claim. While the introduction of testimonial hearsay violates the defendant's Sixth Amendment right to confront his accuser, *Davis v. Washington*, 126 S. Ct. 2266, 2273-74 (2006), because the defendant did not object at trial, the violation requires reversal only when the error was plain, *United States v. Perez*, 989 F.2d 1574, 1582 (10th Cir. 1993) (en banc). Assuming that Officer Stanton did rely in his testimony on inadmissible hearsay, the damage to Mr. Powell's rights was, legally speaking, harmless. Stanton's testimony merely reiterated claims already lodged by multiple other witnesses, each of whom participated personally in the

drug conspiracy at issue. Here again, there was more than enough evidence for the jury to convict Mr. Powell apart from Officer Stanton's testimony.

## II. Testimony of Agent Wilcox and Detective Werth

The prosecution called FBI Agent Todd Wilcox and Denver, Colorado, Police Detective Nick Werth to provide extensive background on the course of the government investigation. In addition to their eyewitness observations, these officers' testimonies included descriptions of surveillance in which they were not personally involved and information gleaned from informants. Mr. Powell objects to these statements as "pervasive hearsay," though he provides nary a single record citation in his opening brief to any alleged hearsay statement and failed at trial to object to any of the testimony he now apparently challenges. We review for plain error. *United States v. Youts*, 229 F.3d 1312, 1320 (10th Cir. 2004).

We have previously held that "out of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken," *United States v. Becker*, 230 F.3d 1224, 1236 (10th Cir. 2000) (internal citations omitted), for the simple reason that such statements are not made to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The two officers' testimonies here fit that description. Officers Wilcox and Werth explained in some detail the operation of wiretaps, of controlled buys, and undercover operations; they explained why police directed the investigation as

-5-

they did.  To be sure, in the course of their testimonies the officers referred to several out-of-court statements made by informants, as well as to general information gathered from the investigation.  In context, however, these references served merely as narrative foundation for the officers' own personal observations.  The government did not attempt to use the statements as evidence of Mr. Powell's guilt, and indeed, these reports constituted only a small portion of the officers' testimonies.

Our precedent allows officers to testify to out-of-court statements if those statements are few in number, confined in scope to explaining the impetus for the investigation, and not used by the government to prove elements of the crime. *United States v. Cass*, 127 F.3d 1218, 1222-24 (10th Cir. 1997).  Each condition obtains here.  We find no error in the testimonies of Officers Wilcox and Werth.

### III.  Plea Agreements

In its direct examination of Agent Wilcox, the government elicited testimony that three non-testifying co-defendants had pled guilty.  On cross-examination, defense counsel went farther: he methodically named twenty-three co-defendants and asked Agent Wilcox to confirm that each had made a plea deal with the government.  The defendant used this information to cast aspersions on the co-defendants' veracity, many of whom testified against him.  By way of rebuttal, the prosecutor explicitly urged the jury during his closing argument to

weigh the co-defendants' decisions to plead and go to prison as evidence of their credibility. Mr. Powell now maintains that evidence of co-defendant pleas should not have been admitted or mentioned by the prosecutor in closing. Because he did not object at trial, however, our review is again for plain error. *Youts*, 229 F.3d at 1320.

This Court has clearly disapproved of the mention of co-defendants' plea agreements, especially when the co-defendants in question do not testify. "Due to the extreme and unfair prejudice suffered by defendants . . . courts and prosecutors generally are forbidden from mentioning that a codefendant has either pled guilty or been convicted." *United States v. Austin*, 786 F.2d 986, 991 (10th Cir. 1986) (internal citations omitted). But reversal is not automatic. As with other trial errors, the improper admission of a co-defendant's plea agreement is analyzed for prejudice—in this case, for plain error. *United States v. Baez*, 703 F.2d 453, 455 (10th Cir. 1983).

The evidence to which Mr. Powell objects is of two types: evidence of plea agreements made by non-testifying co-defendants, and evidence of agreements made by testifying co-defendants. The former is more problematic, and we begin our analysis there. While the mention of any co-defendant's plea arrangement is disfavored, references to the guilty pleas of non-testifying co-defendants are particularly troubling. *Id.* These references encourage the jury to find the defendant guilty by association. They function as testimony against the

defendant, but because the "witness" is not actually present in court, the defendant has no opportunity to challenge the declarant's credibility. *See United States v. Hansen*, 544 F.2d 778, 780 (5th Cir. 1977).

After reviewing the record, however, we conclude that Agent Wilcox's mention of the three non-testifying co-defendants' guilty pleas did not harm the defendant's substantial rights and is therefore not plain error. The differences between the circumstances of this case and those where our Court has found plain error are instructive. In *United States v. Austin*, for instance, the government argued to the jury that the plea bargains made by non-testifying co-conspirators established an element of the crime with which the defendants were charged. 786 F.2d at 991. Similarly, in *United States v. Smith*, 806 F.2d 971, 974 (10th Cir. 1986), our Court reversed after the prosecutor implied that co-conspirators' plea agreements constituted evidence of the defendant's guilt.

In the instant case, by contrast, "there was no fanfare when the pleas were admitted, and the government made no improper arguments based on those pleas." *United States v. Carraway*, 108 F.3d 745, 755-56 (7th Cir. 1997). In fact, the prosecuting attorney personally made no mention of the non-testifying defendants' guilty pleas. The only party who did mention the pleas was the defendant. It is rather remarkable that Mr. Powell now objects so strenuously to evidence his counsel independently introduced.

But more importantly for our review, the independent evidence against the defendant was strong. *Id.* at 756. Considering the trial record as a whole, we are confident that the jury's verdict was untainted by the improper references to the pleas of non-testifying co-defendants.

The government's references to the plea bargains reached by *testifying* co-defendants is relatively less problematic. We have held that prosecutors are entitled to introduce evidence of testifying co-defendants' plea agreements "so that the jury may assess the credibility of the witness the government asks them to believe." *United States v. Whitney*, 229 F.3d 1296, 1306 (10th Cir. 2000) (internal citations omitted). Contrary to Mr. Powell's assertions, the government need not wait to introduce this evidence until after the defense has mounted an impeachment challenge. Rather, "either the government or the defense may elicit testimony from a co-defendant regarding his guilty plea for purposes of aiding the jury in its assessment of the co-defendant's credibility as a witness." *Id.* at 1304.

Mr. Powell did in fact question the credibility of the testifying co-defendants by repeatedly raising the specter of their plea bargains. In light of this trial strategy, the prosecution's attempt to spin the guilty pleas in the opposite direction by mentioning them at closing argument—as evidence of the witnesses' credibility—was entirely justified. The prosecution did not encourage the jury to treat the plea agreements as evidence of Mr. Powell's guilt, *United States v. Peterman*, 841 F.2d 1474, 1479 (10th Cir. 1988), but argued only that jurors

should weigh them in evaluating the witnesses' truthfulness. In keeping with our precedent, the district court issued a limiting instruction directing the jury to consider the agreements only for the purpose of assessing witness credibility. *See Baez*, 703 F.2d at 455 (reversing in part because trial court failed to issue limiting instruction). The government's use of the testifying co-defendant's plea bargains was legitimate. We find no error.

## IV. Testimony of Gabriel Davis

In an effort to salvage the credibility of witness Gabriel Davis after close questioning by defense counsel, the prosecution prodded Mr. Davis on redirect examination to rehearse various statements he made to police officers following his arrest, statements consistent with those he offered the jury on direct examination. Mr. Powell contends that these out-of-court statements are hearsay and do not qualify for the prior-consistent-statement exception of Federal Rule of Evidence 801(d)(1)(B). He did not make this objection at trial in so many words. Instead, he objected to Mr. Davis's redirect testimony as beyond the scope of direct examination. In response to the defendant's objection, the government argued that Mr. Davis's prior consistent statements should come in under Rule 801(d)(1)(B). The district court overruled the defendant's objection, apparently on this ground. Thus the Rule 801 issue was raised and ruled upon and preserved

for appellate review, if somewhat circuitously. We review for harmless error. *United States v. Perdue*, 8 F.3d 1455, 1469 (10th Cir. 1992).

The U.S. Supreme Court has made clear that Rule 801(d)(1)(B) permits the introduction of a declarant's prior consistent statement to rebut a charge of recent fabrication, but only if the statement was made *before* the declarant's arrest. *Tome v. United States*, 513 U.S. 150, 167 (1995). Gabriel Davis's prior consistent statements *followed* his arrest, however, meaning that, according to the logic of our precedent, the statements came after Mr. Davis had acquired a motive to lie. *United States v. Moreno*, 94 F.3d 1453, 1455 (10th Cir. 1996). Thus, Mr. Davis's prior consistent statements were inadmissible hearsay.

But though the admission of Mr. Davis's prior statements constituted error, we conclude that the error was harmless. The defendant fails to demonstrate that the district court's misruling had a "substantial influence" on the outcome or should leave this Court in "grave doubt" as to the verdict's validity. *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). Mr. Powell's only argument on this score is that because Davis "was one of the witnesses" directly connecting the defendant to the drug transactions, Aplt. Br. 34, the absence of Mr. Davis's testimony might have altered the jury's decision. The defendant is right, in a sense: Davis was just one of multiple witnesses linking the defendant to the criminal transactions at issue. Moreover, not all of Davis's testimony was

-11-

inadmissible—merely a small portion offered on redirect examination. Most of Mr. Davis's testimony was perfectly legitimate and remains intact. Given this and the other, overwhelming evidence against the defendant, the district court's erroneous admission of Davis's prior consistent statement does not leave us in "grave doubt" about the trial's outcome. The error was harmless.

### V. Wiretaps

As part of their investigation, police sought and obtained fourteen wiretap orders and introduced at trial conversations gathered pursuant to thirteen of them. Mr. Powell alleged that the orders were improperly granted and moved to suppress. The trial court denied Mr. Powell's motion. Mr. Powell appeals the denial as to eleven of the orders. This Court will reverse a district court's decision to issue wiretaps only if that decision was arbitrary, capricious, or whimsical, or results in a manifestly unreasonable judgment. *United States v. Nickl*, 427 F.3d 1286, 1300 (10th Cir. 1995). After thoroughly reviewing the record, we conclude that the issuing court did not abuse its discretion.

In order to obtain a wiretap, the government must show that traditional investigative techniques failed or were too dangerous to attempt. 18 U.S.C. §§ 2518(1)(c), 2518(3)(c). If any traditional investigative techniques were not tried, the government must explain why with particularity. *United States v. Mitchell*, 274 F.3d 1307, 1310 (10th Cir. 2001). In a word, the government must

demonstrate that the wiretaps were necessary. *United States v. Ramirez-Enarnacion*, 291 F.3d 1219, 1222 (10th Cir. 2002). Once a wiretap has been approved, the defendant bears the burden of showing it invalid. *United States v. Quintana*, 70 F.3d 1167, 1169 (10th Cir. 1995).

Each of the wiretap applications challenged by Mr. Powell is supported by numerous pages of specific, sworn testimony explaining why a wiretap was necessary. Police investigators carefully explained their investigative methods, and set out in some detail why traditional techniques had failed. Among the explanations offered: The defendants had become aware of police surveillance and adopted counter-surveillance measures; police could not confirm the residence of one or more of the defendants in order to obtain a search warrant; police were unable to identify all of the defendants' drug suppliers through standard surveillance. Pen registers and other traditional methods could not, the affidavits claim, "identify the source or sources of the controlled substances" or the "the persons involved in storage or distribution." And while investigators managed to acquire a confidential informant within the drug operation, they feared to press him for useful information about Mr. Powell on the suspicion that he was ultimately loyal to the defendant and would alert Mr. Powell to their ongoing investigation.

Given this factual background, we find the issuing judge's decisions well within the bounds of permissible choice. *Nickl*, 427 F.3d at 1300. Mr. Powell

contests the issuing court's interpretation of the affidavits and would have us do the same. But our review is not *de novo*. The facts the affidavits set out are more than sufficient to support a finding of necessity. Having made this judgment, our review is at an end. The issuing court did not abuse its discretion.

## VI. Cumulative Error

Mr. Powell urges us to find that even if the errors he alleges are individually harmless, they create, in the aggregate, a critical mass of prejudice that trenches on his substantial rights. We are indeed bound to consider whether the cumulative effect of otherwise harmless errors violated Mr. Powell's right to a fair trial. And if any of the errors to be aggregated is constitutional, the cumulative error must be harmless beyond a reasonable doubt. *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002). Should we conclude otherwise, reversal is the remedy. But only *actual* errors factor in our analysis. *Id.*

We have assumed one actual error—the introduction of Officer Stanton's lay opinion testimony premised on testimonial hearsay—and positively identified two others: the admission of Gabriel Davis's prior-consistent statements and the government's reference to the guilty pleas of three non-testifying co-defendants. Yet after examining the proceedings below in their entirety, we are persuaded that the outcome would not have been different even had these errors been corrected.

-14-

We are convinced beyond a reasonable doubt that the cumulative effect of these errors was harmless.

### VII. Insufficiency of the Evidence

The government concedes that the evidence adduced at trial was insufficient to support the jury's convictions on counts 23, 96, and 97. While we have the authority to remand for entry of judgment on a lesser-included offense, we note that the trial court did not issue lesser-included-offense instructions to the jury and the defendant has not admitted his guilt as to any such offenses. *United States v. Mitcheltree*, 940 F.2d 1329, 1352 n.17 (10th Cir. 1991). Moreover, entering judgment on lesser-included offenses would leave Mr. Powell's total sentence—he was properly convicted and sentenced to six concurrent life terms—unaffected.

Therefore we **VACATE** Mr. Powell's convictions on counts 23, 96, and 97 and direct the district court to modify its judgment accordingly. We **AFFIRM** Mr. Powell's convictions on all remaining counts.

Entered for the Court,

Michael W. McConnell
Circuit Judge

-15-