**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 16, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHRIS REESE,

Defendant-Appellant.

No. 04-3027

(D. Kansas)

(D.C. No. 03-20053-02-GTV)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **McKAY**, and **HENRY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In October 2003, a jury convicted Chris Reese of (1) one count of conspiracy to distribute more than fifty grams of cocaine base, in violation of 21

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

U.S.C. § 841(a)(1), (b)(1)(A)(iii), and (2) one count of possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii). On appeal, Mr. Reese contends that (1) the district court erred by not giving a requested jury instruction as to his co-defendant's guilty plea; (2) the evidence against him is insufficient to support the guilty verdict; and (3) a judge-found sentencing enhancement constitutes plain error under *United States v. Booker*, 125 S. Ct. 738 (2005). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm Mr. Reese's convictions and sentences.

## I. BACKGROUND

In November 2002, as part of narcotics investigations in Kansas City, Kansas, Officer Eric Jones arrested a woman who bought crack cocaine for an undercover officer. Officer Jones then went to a residence at 2902 N. 27th Street, where officers had witnessed the woman purchase the crack. He approached the residence and saw a man (later identified as Donta Hill) enter through the front door. Officer Jones ran inside the house and handcuffed Mr. Hill. Officer Jones found the undercover officer's "buy money" (used to purchase the drugs) in Mr. Hill's pocket and arrested him.

As Officer Jones was arresting Mr. Hill, Mr. Reese came out of the northeast bedroom of the residence. He was detained and handcuffed for officer

safety. Rec. vol. VIII, at 20. Officers found $698 in Mr. Reese's pockets, which he attributed to prior employment with a recording company and at comedy shows. Officers also swept the house looking for other persons. In the northeast bedroom from which Mr. Reese had exited, Officer Jones saw in plain view a handgun, a bag of what he suspected was crack cocaine, and a small amount of marijuana. He also saw three shotguns in a separate bedroom. *Id.* at 21-22.

After obtaining a search warrant, officers conducted a search and found approximately five grams of crack cocaine hidden between a mattress and bedframe, a loaded handgun, and a bag containing 11.5 grams of crack cocaine in a black gym bag belonging to Mr. Reese, all in the northeast bedroom; officers also found 413 grams of crack cocaine in the northeast bedroom closet. *Id.* at 33, 101-02. In the southwest bedroom, officers discovered three shotguns and nearly forty-three grams of crack cocaine tucked inside a baseball cap in the closet. *Id.* at 53-54, 101-02.

Mr. Hill, the co-defendant in the case, pleaded guilty to (1) conspiracy to possess with intent to distribute more than fifty grams of crack cocaine, (2) possession with intent to distribute more than fifty grams of crack cocaine, and (3) maintaining a drug house. As part of his plea agreement, Mr. Hill agreed to testify against Mr. Reese.

At Mr. Reese's trial, Mr. Hill testified that he had frequent contact with Mr.

Reese in the five years preceding the November 2002 arrest. Rec. vol. IV, at 17. Mr. Hill further testified that Mr. Reese "occasionally" had sold crack cocaine at the residence and had handled a "house gun" kept at the residence. *Id.* at 35, 66-67. According to Mr. Hill, drug activity occurred over a three-week period of time at the residence, starting in early November 2002, and some customers returned to the residence up to ten times per day to purchase crack cocaine. *Id.* at 20-26. Mr. Hill stated at trial that he and Mr. Reese were "front[ed]" small quantities of crack from two other individuals, "Deloke" and "Richie," who had larger amounts of crack cocaine at the residence. *Id.* at 40-42.

The government charged Mr. Reese with (1) one count of conspiracy to distribute more than fifty grams of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii); (2) one count of possession with intent to distribute more than fifty grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii); (3) one count of possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A); and (4) one count of maintaining a drug house, in violation of 21 U.S.C. § 856(a)(1). In November 2003, a jury convicted Mr. Reese of the first count and the lesser-included offense of the second count (possession with intent to distribute more than five grams of cocaine base). The jury acquitted him of possessing a firearm in furtherance of drug trafficking and maintaining a drug house.

At sentencing, the district court began with a base offense level of thirty and found facts supporting a two-level enhancement for possession of a firearm during the offense. *See* U.S.S.G. § 2D1.1(b)(1). It then reduced two levels for Mr. Reese's minor participation under U.S.S.G. § 3B1.2(b). With a total offense level of thirty and criminal history category of II, the Guidelines range was 108 to 135 months. The conspiracy count required a mandatory minimum sentence of 120 months. *See* 21 U.S.C. § 841(b)(1)(A)(iii). The district court sentenced Mr. Reese to 130 months' imprisonment on each of the two counts, to run concurrently.

## II. ANALYSIS

Mr. Reese now appeals his conviction and sentence on three grounds. He contends that (1) the district court erred in not giving his requested jury instruction about Mr. Hill's guilty plea; (2) the evidence is insufficient to support the guilty verdict; and (3) the district court's enhancement for possession of a firearm constituted plain error under *Booker*.

A.    Jury instructions regarding Mr. Hill's guilty plea

At trial, co-defendant Mr. Hill testified in the government's case-in-chief and provided detailed information about Mr. Reese's drug trafficking activity. Mr. Reese contends on appeal that the district court erred by not giving his

requested jury instruction that Mr. Hill's guilty plea could not be considered as evidence against Mr. Reese. "We must review the district court's decision to give a particular jury instruction for abuse of discretion." *United States v. McPhilomy*, 270 F.3d 1302, 1310 (10th Cir. 2001) (quotation marks omitted). However, we "consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." *Id.*

The district court gave the following instruction about Mr. Hill's testimony and guilty plea:

> You have heard the evidence that one witness, Donta Hill, has received promises from the government. This testimony was received in evidence and may be considered by you. You may give the testimony such weight as you think it deserves. Whether or not such testimony may have been influenced by the government's promises is for you to determine. If you determine that the testimony of such a witness was affected by those promises, then you should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict a defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

Rec. vol. IX, at 23-24.

Mr. Reese's counsel objected on grounds that the district court's instruction did not adequately explain that Mr. Hill's guilty plea should not be considered as evidence against Mr. Reese. The district court declined to place particular details of Mr. Hill's plea agreement into the jury instruction, as requested by Mr. Reese's counsel, because it was concerned that the instruction incorporated defense

arguments. Rec. vol. VI, at 8-9. Mr. Reese also maintained that the prosecutor made improper comments during closing argument by stating, "Donta Hill? Yeah, he got a deal, and you can consider that. But if you have got a problem with the deal that Donta Hill got, then you can come up after this trial and you can tell me about it." Rec. vol. IX, at 36. The district court instructed the jury to disregard the remark.

"A codefendant's guilty plea may not be used as substantive evidence of a defendant's guilt." *United States v. Baez*, 703 F.2d 453, 455 (10th Cir. 1983). "If the codefendant testifies, however, either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the codefendant's credibility as a witness." *Id.* Because a co-defendant's guilty plea has "potential for prejudice, cautionary instructions limiting the jury's use of the guilty plea to permissible purposes are critical." *Id.* As a general rule, "[a] criminal defendant is entitled to an instruction on his theory of defense provided that theory is supported by some evidence and the law." *United States v. Alcorn*, 329 F.3d 759, 767 (10th Cir. 2003) (internal quotation marks omitted). However, such an instruction is required "only if, without the instruction, the district court's instructions were erroneous or inadequate." *Id.*

The government here did not argue at trial that the jury should find Mr. Reese guilty because of Mr. Hill's guilty plea. Mr. Hill testified about his plea

agreement, his obligation to testify, and the cooperation he had provided to the government, and Mr. Reese's counsel did not object to this testimony. Rec. vol. IV, at 3-15. Moreover, the district court effectively instructed the jury that (1) Mr. Hill received benefit from his testimony, (2) it should consider that fact in evaluating his testimony, and (3) it should receive and weigh his testimony using caution and great care. The district court's instructions, as a whole, accurately informed the jury of the governing law. Thus, the district court was within its discretion when it did not give Mr. Reese's proposed jury instructions about Mr. Hill's guilty plea.

## B. Sufficiency of the evidence

Mr. Reese contends that the evidence at trial was insufficient to prove that he conspired to distribute more than fifty grams of cocaine base. We review claims of sufficiency of the evidence de novo and determine "whether, taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Avery*, 295 F.3d 1158, 1177 (10th Cir. 2002) (internal quotation marks omitted).

"Under 21 U.S.C. § 846, the Government must prove beyond a reasonable doubt: (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary

involvement, and (4) interdependence among the alleged conspirators." *United States v. Delgado-Uribe*, 363 F.3d 1077,1083 (10th Cir. 2004). "The core of a conspiracy is an agreement to commit an unlawful act." *United States v. Esparsen*, 930 F.2d 1461, 1471 (10th Cir. 1991).

Mr. Reese primarily contends that the government did not present sufficient evidence of the second element of conspiracy. He relies on *United States v. Evans*, 970 F.2d 663, 670 (10th Cir. 1992), where we stated that a defendant "must have a general awareness of both the scope and the objective of the enterprise to be regarded as a coconspirator." Mr. Reese cites Mr. Hill's testimony that the drug house opened in November 2002 and that Mr. Reese had worked up to selling a gram of crack each day. He also maintains that the small amount of money in the house does not support the government's contention of a large-scale distribution.

We are not convinced by Mr. Reese's arguments. Mr. Hill testified that, while activity may have occurred over a three-week period of time, some customers returned to the residence up to ten times per day to purchase crack cocaine. Rec. vol. IV, at 20-26, 35-36. According to Mr. Hill, he and Mr. Reese were "front[ed]" small quantities of crack from "Deloke" and "Richie," who had the larger quantities of crack in the residence. *Id.* at 40-42. Officers recovered in total some 473 grams of crack cocaine in the residence, and Mr. Reese was

arrested as he exited the northeast bedroom. In that bedroom, officers found crack cocaine and a loaded handgun in a gym bag identified as belonging to Mr. Reese. "Knowledge [of illegal activity] and presence [at the crime scene] coupled with knowing participation in the illegal drug activities are sufficient to sustain a drug conspiracy." *United States v. Coyote*, 963 F.2d 1328, 1331 (10th Cir. 1992). Viewing evidence in the light most favorable to the government, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

C.     *Booker* challenge to a two-level enhancement

The jury acquitted Mr. Reese of possessing a firearm in furtherance of drug trafficking. *See* 18 U.S.C. § 924(c)(1)(A). At sentencing, the district court relied on judge-found facts and applied a two-level enhancement for possessing a firearm during the offense. *See* U.S.S.G. § 2D1.1(b)(1). The district court concluded that Mr. Reese had an applicable offense level of thirty. It started with a base offense level of thirty, added two levels for the presence of a firearm, and reduced two levels for being a minor participant under U.S.S.G. § 3B1.2(b). With a criminal history category of II, the Guidelines' range was 108 to 135 months. Without the judge-found, two-level enhancement, the Guidelines range would have been 87 to 108 months. The minimum term of imprisonment, however, for the conspiracy count was 120 months. *See* 21 U.S.C. § 841(b)(1)(A)(iii). Thus,

absent the judge-found enhancement, Mr. Reese's sentence would have been 120 months' imprisonment; with the judge-found enhancement, the sentence could have been up to 135 months. The district court considered a range of 120 to 135 months' imprisonment and sentenced Mr. Reese to 130 months' imprisonment on each count, to run concurrently.

Mr. Reese now alleges a Sixth Amendment constitutional error because the jury did not find, and Mr. Reese did not admit to, facts that would support the two-level enhancement. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005). Because Mr. Reese did not object to the enhancement during sentencing, we review the district court's decision for plain error. *Id.* at 730. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 732 (internal quotation marks and citation omitted). We conduct our plain error analysis of constitutional claims "less rigidly" than claims of non-constitutional error. *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005) (quotation marks omitted).

In light of *Booker*, the first two prongs of our plain error analysis are met. The district court committed a constitutional error when it determined facts supporting the two-level enhancement, and the error is plain. *Id.*

As to the third factor, Mr. Reese must show that the error "affected the

outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). This burden is met "if the defendant shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence." *Dazey*, 403 F.3d at 1175. Here, Mr. Reese has established the necessary prejudice. A jury applying the beyond-a-reasonable-doubt standard acquitted him of possessing a firearm in furtherance of drug trafficking. However, the district court, applying the preponderance-of-the-evidence standard, found that Mr. Reese possessed a firearm during the offense. *See* U.S.S.G. § 2D1.1(b)(1). Although the terms of the statutory offense and the Guideline provision are not identical, they are sufficiently similar to demonstrate a reasonable probability that a jury would not have found the material facts necessary to support the two-level enhancement under Section 2D1.1(b)(1).

Finally, Mr. Reese must show that he satisfies the fourth prong of plain error. *Gonzalez-Huerta*, 403 F.3d at 736. We have previously identified three "non-exclusive factors" to guide our discretion in correcting constitutional *Booker* errors that are plain. *United States v. Clifton*, 406 F.3d 1173, 1182 (10th Cir. 2005).

> First, if the underlying right is constitutional, we are more likely to conclude that a remand would be appropriate. Second, if the defendant challenged the factual basis of the judicial findings that affected his substantial rights, this weighs in favor of a remand. Third, the

-12-

magnitude of the difference between the sentence authorized by a jury's verdict or a plea of guilty and the sentence permitted after mandatory judicial fact finding affects whether or not we should correct the error.

*United States v. Hauk*, 412 F.3d 1179, 1197 (10th Cir. 2005) (internal citations omitted); *see also United States v. Dowlin*, 408 F.3d 647, 671 (10th Cir. 2005) (describing five kinds of evidence "support[ing] an exercise of our discretion" to correct a sentencing error under the fourth prong).

Here, the first of these "fourth prong" factors suggests that remand would be appropriate, as the error in Mr. Reese's sentence is of a constitutional nature. As to the second factor, Mr. Reese did not object to the presentence report's suggested two-point enhancement for possession of a dangerous weapon, and the district court applied the enhancement at sentencing without discussion. "Where a defendant acquiesces to the district court's findings of fact that support an enhancement with little or no objection, leaving the resulting plain error uncorrected poses little risk to the fairness or integrity of judicial proceedings." *Hauk*, 412 F.3d at 1197-98; *cf. United States v. Bass*, 411 F.3d 1198, 1204 n.7 (10th Cir. 2005) ("[W]e are unwilling to conclude that [the defendant's] failure to object [to a fact in a presentence report] operated as an admission of fact for purposes of the rights announced in *Booker*.") (internal quotation marks omitted).

Regarding the third factor, we cannot conclude that any increase in Mr. Reese's sentence from judge-found facts requires us to exercise discretion to

correct the sentencing error. Given the statutory minimum sentence and the judge-found enhancement, the district court considered a range of 120 to 135 months' imprisonment. It found that "a Criminal History Category 2 for Mr. Reese really tends to understate his criminal history . . . sufficiently that I'm not going to sentence at the bottom of the guideline range." Rec. vol. XI, doc. 94, at 21. The district court sentenced Mr. Reese to 130 months' imprisonment on each count, to run concurrently.

Accordingly, we cannot conclude that *Booker* error here affected the integrity, fairness, or public reputation of judicial proceedings. The district court sentenced Mr. Reese near the top of the unlawfully determined Guidelines range. Furthermore, Mr. Reese has not shown that "the district court would likely impose a significantly lighter sentence on remand" or that "evidence peculiar [to Mr. Reese] demonstrates a complete breakdown in the sentencing process." *Dowlin*, 408 F.3d at 671. *See United States v. Lawrence*, 405 F.3d 888, 908 (10th Cir. 2005) (noting that, when a district court sentenced a defendant under *Booker* constitutional error to two months above the bottom of the Guidelines range, "[t]he court's apparent rejection of defense counsel's arguments that a lower sentence was appropriate strongly indicates that the court felt that there were no mitigating factors that would justify a lower sentence in this case"); *cf. Hauk*, 412 F.3d at 1198 (concluding that a defendant met the fourth prong when "[t]he effect

of the judge-found facts was to increase the bottom of the applicable sentencing range by either 30 or 56 months" and the district court sentenced him at the *bottom* of the Guidelines range).

Thus, because Mr. Reese cannot meet the fourth prong of plain error analysis, he is not entitled to relief or resentencing in light of *Booker*.

## III. CONCLUSION

Accordingly, we AFFIRM Mr. Reese's convictions and sentences.

Entered for the Court,

Robert H. Henry
Circuit Judge